**Ex Parte James Otis BROWN, Applicant.**

No. AP–73932.

Court of Criminal Appeals of Texas, En Banc.

Jan. 12, 2005.

Rehearing Denied March 23, 2005.

Hervey, J., dissented.

Keller, P.J., filed dissenting opinion in which Hervey, J., joined.

Womack, J., filed dissenting opinion.

Keasler, J., filed dissenting opinion in which Keller, P.J., and Hervey, J., joined.

John Tatum, Richardson, for appellant.

Kathi Drew, Assist. DA, Dallas, Matthew Paul, State's Attorney, Austin, for State of Texas.

## *OPINION*

PER CURIAM.

In this post-conviction application for a writ of habeas corpus, applicant asserts that Judge Baraka, the original trial court judge, violated his right to due process because he refused to consider the full range of punishment at the hearing on the State's motion to adjudicate. We agree with applicant and therefore grant relief.

### I.

Applicant was charged with robbery. He pleaded guilty on July 12, 1989, and Judge Baraka deferred any finding of guilt and placed him on probation for four years. Shortly thereafter, applicant violated the conditions of his probation by failing to report to the probation officer in August, September, and October, and by failing to pay his probation fees, fine, and restitution. At the adjudication hearing, applicant pleaded "true" to the allegations and testified:

> Defense: What can you tell the Judge, for what good reason can you give him for having not [abided by the probation conditions]?
>
> Applicant: There was really no good reason, Your Honor.
>
> Court: You're not asking me to do anything but what I said, aren't you. I told you what I was going to do if you did this, didn't I?
>
> Applicant: Yes, sir. Your Honor.
>
> Court: So tell me what it is that you're going to ask me to do.
>
> Applicant: I'm going to ask you to reinstate me.
>
> Court: Go on. I'm listening.
>
> Applicant: I'm just going to ask you to reinstate me.

> Court: Remember that long conversation I had when I put you on probation?
>
> Applicant: Yes, sir, Your Honor.
>
> Court: And you can look me in the eye, and you're actually going to ask me that?
>
> Applicant: Yes, sir.
>
> Court: Okay. Anything else?
>
> Defense: Anything else you want to add?
>
> Applicant: The reason why I didn't report [was] because I had a lot of problems since day one when I got out of jail. I was smoking crack.
>
> Court: That is strong.
>
> Applicant: It's terrible.
>
> Court: What did I tell you when you got out and you had some problems?
>
> Applicant: To come see you.
>
> Court: Some [*sic*] and see me. If you had a drug problem, I'd help resolve that for you. Didn't I tell you that?
>
> Applicant: Yes, sir.
>
> Court: If you needed a job, come to me, I'd find you a job. Didn't I tell you that?
>
> Applicant: Yes, sir, Your Honor.
>
> Court: If you need a place to live, come to me. I'll find you a place to live. Didn't I tell you that.
>
> Applicant: Yes, sir.
>
> Court: But I said, sir, don't fail to report. Don't ever do it. Didn't I tell you that?
>
> Applicant: Yes, sir.
>
> Court: I told you what I'd do about it if you did.
>
> Applicant: You said you'd give me twenty years.
>
> Court: Watch me. Pay attention. Anything further?

There was nothing further, and Judge Baraka sentenced applicant to twenty years in prison, the maximum punishment. Applicant did not object. His conviction was affirmed on appeal.[1]

Applicant then filed a writ of habeas corpus alleging that: 1) the trial judge denied him due process of law by prejudging his punishment; 2) his trial counsel rendered ineffective assistance of counsel by failing to object to the trial court's sentencing procedure; and 3) his appellate counsel rendered ineffective assistance of counsel by filing an *Anders*[2] brief which stated that there were no grounds that would warrant reversal.

At the time applicant filed his habeas writ, Judge Baraka was no longer the presiding judge of the convicting court. He had been succeeded by Judge King who made factual findings, including one that:

> there are a number of cases on the books which remanded cases back to the Criminal District Court No. 2 due to Judge Baraka's promises made at the time the defendant was placed on probation. [footnote: *See, Jefferson v. State,* 803 S.W.2d 470 (Tex.App.-Dallas 1991, pet. ref'd); *Earley v. State,* 855 S.W.2d 260, 262 (Tex.App.-Corpus Christi 1993, pet. dism'd); *Howard v. State,* 830 S.W.2d 785 (Tex.App.-San Antonio 1992, pet. ref'd).] For a period of time when Judge Baraka would place a defendant on probation he told them if they "messed up" he would give them the maximum sentence at the revocation hearing. The statement of facts attached to the application for writ of habeas corpus indicate[s] that this case is another example of Judge Baraka prejudging punishment. The court finds that the record supports Applicant's

claim that he was promised the maximum sentence in this case if he messed up on probation and at the revocation hearing Judge Baraka imposed the promised sentence without consideration of any evidence. The court finds that Applicant is entitled to a new revocation hearing.

After reviewing the writ application, attached materials, and Judge King's Findings of Fact and Conclusions of Law, this Court remanded to the trial court for further findings and conclusions. First, we asked the trial court to consider whether applicant's due-process claim could be brought for the first time on a writ of habeas corpus when other probationers, as noted by Judge King, had brought this same claim by direct appeal. Normally, the writ of habeas corpus cannot be used to litigate matters that could have, and therefore should have, been raised on direct appeal. Second, we asked the trial court to give Judge Baraka an opportunity to testify or otherwise explain on the record whether he had, in fact, prejudged applicant's punishment. Although the bare record could support a finding of punishment prejudgment—that Judge Baraka was simply carrying out the "promise" he made when he placed applicant on probation to give him the maximum punishment if he violated any condition of probation—there might also be other reasons, not apparent on the record, which would explain Judge Baraka's sentence.

## II.

■ On remand, a new district court judge, Judge Stricklin, found that applicant could not raise his due-process claim

---

1. *Brown v. State,* No. 05–90–00306–CR (Tex. App.-Dallas, filed February 26, 1991, pet. ref'd).

2. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

by writ of habeas corpus. Noting that the issue of prejudgment of punishment is an issue that can be appealed, the trial court found that the record did not justify applicant's failure to raise the issue on appeal.[3] Thus, the trial judge concluded, as a matter of law, that applicant was procedurally barred from raising the issue on a writ.

■ This is a conclusion of law that we review *de novo*. Although no appeal may be taken from a trial court's decision to proceed with adjudication of guilt, the deferred-adjudication statute expressly permits a defendant to appeal the assessment of punishment. Article 42.12, section 5(b) states: "After an adjudication on guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred." Because applicant could have raised his due-process claim of prejudgment of punishment on direct appeal, he ordinarily would not be entitled to raise the issue by writ.

However, this particular case demonstrates an exception in which a habeas applicant may raise his due-process claim for the first time by writ of habeas corpus. As with the vast majority of claims of ineffective assistance of counsel, the trial record is insufficient to allow an appellate court to resolve the issue. Judge Baraka's admonition—that he would impose the maximum sentence if applicant violated his probation—does not, by itself, show prejudgment of punishment. In the absence of other evidence or indications of prejudgment in the trial record, an appellate court could not resolve this claim. Two types of extra-record evidence, in particular, are useful to the resolution of a due-process issue of prejudgment of punishment.

First, a court could examine other cases from Judge Baraka's court to determine what types of cases, and how often, the judge threatened to impose the maximum sentence, and how often he actually did assess such a sentence. That is the evidence that Judge King relied upon in finding that Judge Baraka did prejudge the sentence in this case. That pattern of prejudging punishment could not be shown by looking only to the trial court record in applicant's case. But that was the only extra-record evidence that Judge King relied upon.

A second, even more important, type of relevant information not contained in the trial record would be Judge Baraka's tes-

---

3. Applicant also failed to object to Judge Baraka's sentence in the trial court. In *Hull v. State*, 67 S.W.3d 215 (Tex.Crim.App.2002), we held that a defendant who failed to object to the imposition of "zero tolerance" probation forfeited his right to complain about that condition on appeal. In that case, the defendant did not object at the time the trial judge orally imposed the "zero tolerance" probation condition, and he did not object at the time his probation was revoked. In *Hull*, unlike the present case, the trial "record reflects that appellant understood the 'zero tolerance' policy to be overriding and controlling.... Appellant was fully aware of the court's policy toward his probation and did not object." *Id.* at 218.

In the present case, the record shows that applicant was aware that the trial judge had "promised" to revoke his probation if he violated any of the probation conditions and that he had "promised" to impose the maximum prison sentence if applicant violated those conditions. Here, however, Judge Baraka imposed the maximum sentence without any explanation for its basis. He might have imposed that sentence for very good reasons, based upon applicant's underlying robbery offense and because of the seriousness of the probation violations. In this particular situation, as with many ineffective assistance of counsel claims, the trial record, by itself, is not necessarily adequate for the defendant to object and present a valid constitutional claim at the time of the conduct.

timony or statements on this issue. Because applicant could not provide such evidence without going outside the trial record, he, like those defendants claiming ineffective assistance of counsel, may raise his due-process claim by writ of habeas corpus.

Therefore, we cannot adopt Judge Stricklin's conclusion of law that applicant waived his due-process claim by failing to raise it on direct appeal.

### III.

■ Judge Stricklin also found that Judge Baraka did not prejudge applicant's punishment and concluded that applicant had failed to prove a due-process violation. Based on testimony offered at the hearing on remand, the trial court found that Judge Baraka imposed the maximum sentence based on what he "learned about the applicant from what was before him during the original plea and revocation hearing." We conclude that the habeas record does not support the trial court's conclusion.

■ In *McClenan v. State*,[4] we noted, in dictum, that "[a] court's arbitrary refusal to consider the entire range of punishment would constitute a denial of due process[.]"[5] Texas trial courts have wide discretion in determining the proper punishment in a revocation hearing, but due process guarantees a defendant the right to a hearing before a "neutral and detached hearing body."[6] One federal court has stated, in holding that Judge Baraka prejudged a probationer's punishment:

[A] defendant is entitled to a probation revocation hearing before a judicial officer who has not predetermined that probation should be revoked or that a particular punishment should be imposed.[7] In supervising a probationer, a trial judge must "constantly remember that he may one day be cast in the role of trier of fact in a revocation proceeding, and that in that event he will be required to disqualify himself unless he has refrained from pre-judgment."[8]

In this case, the habeas judge, Judge Stricklin, noted that "Judge Baraka testified that the lack of mitigating evidence at the adjudication hearing led him to impose the maximum sentence." Judge Baraka did testify that he would have considered any mitigating evidence:

Q: (by the State's attorney) If he had presented any substantial excuse or some substantial mitigating evidence, would you have taken that into consideration?

A: Sure, always. You never know. Sometimes, as they say, truth is stranger than fiction. I have had— for instance, it was known that if you failed to report, you are absolutely going to the penitentiary. Well, in 99.2 percent of the time, it was probably true; but I have had some people who come forth and based on all the facts and circumstances, I could put myself in the place of a person who may be distraught, not thinking right, making the right choices; and if those are giving me the options, I probably

---

**4.** 661 S.W.2d 108 (Tex.Crim.App.1983), *overruled on other grounds by De Leon v. Aguilar,* 127 S.W.3d 1 (Tex.Crim.App.2004).

**5.** *Id.* at 110.

**6.** *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

**7.** *Gonzales v. Johnson,* 994 F.Supp. 759, 762 (N.D.Tex.1997).

**8.** *United States v. Sciuto,* 531 F.2d 842, 846 (7th Cir.1976).

would not send them to the pen; but, you know, my main thing oftentimes was just to try to get their attention.

Q: You wanted to impress upon them the seriousness of the situation?

A: If it was with him, him, and whoever was watching that was ready to come before me.

Here, Judge Baraka testified that he would have considered mitigating evidence in deciding *whether* to revoke probation. He would, he said, consider the fact that a person was "distraught, not thinking right, making the right choices." In that case he might not revoke probation and "send them to the pen." That testimony tells us nothing, however, about whether Judge Baraka carried through on his original promise to applicant to impose the maximum sentence *if* he did, in fact, revoke probation.

Judge Baraka forthrightly acknowledged that he could not remember anything about this case; he was basing his testimony on nothing more than his usual routine and his review of the statement of facts in this case. From that review it looked to him as if he was simply making good on a promise he had made during the original plea hearing:

Q: (By applicant's attorney) And it is my understanding that after reviewing the information that was provided to you that you have no personal recollection of this gentleman who is sitting next to me as James Otis Brown?

A: No, I do not.

Q: And—but you don't remember the circumstances of why he appeared before you on the original plea or his revocation?

A: I haven't a clue. Even now, to be honest with you, I don't know.

Q: Okay. You made the statement that, "Based upon my reading and interpretation, it would appear that I had advised Mr. Brown that he would receive a 20–year sentence if he violated the terms and conditions of his probation." [9]

And that was a statement you made after reading the transcript of the original plea; is that correct?

A: Correct.

Q: And you also state, "Upon revocation, I apparently sentenced Mr. Brown to 20 years."

Fulfilling that promise is a reasonable interpretation of what could be made from that; is that correct?

A: Correct.

Q: Okay. But other than the interpretation that there was a prejudgment because he did receive what he was promised, you don't have any specific recollection as to why him particularly one way or another?

A: No, not with him particularly.

Q: Or what facts went into your judgment in setting the sentence at that point?

A: With regard to him specifically, no.

---

9. The statement was made in an affidavit admitted as an exhibit at the hearing. That affidavit read, in its entirety:

I, Larry W. Baraka, swear that the foregoing statement is true and correct.

I have no personal recollection of Mr. James Otis Brown, nor the circumstances of his appearance before me.

I have read the statement of facts. Based upon my reading and interpretation, it would appear that I had advised Mr. Brown that he would receive a 20 year sentence if he violated the terms and conditions of his probation.

Upon revocation, I apparently sentenced Mr. Brown to 20 years in the Texas Department of Corrections.

Further, Judge Baraka, responding to applicant's counsel's question about trial counsel's performance, said:

A: ... Sometimes mitigating evidence is nothing, just a guy giving me an excuse. Sometimes it has a value.

Q: It could have a value?

A: Correct. But, as I said, in interpreting his case, I don't know him personally. I don't know all the things I said to him.

In writing the affidavit, I tried to be as honest and straight with it, and give him the benefit of the doubt, in fact; and by reading it, I have interpreted that I could have very well told him, in advance, that if I saw you again, you are going to get 20 years, and gave it to him, because generally, if I said I was going to do something—probably until the time that the Court of Criminal Appeals told me that I can't do it; but generally when I told a person that I was going to do something, I rarely failed to do it.

Judge Baraka's testimony does not support the conclusion that he did not prejudge applicant's *punishment.* Although he testified that he did not remember applicant at all, he normally—or as he put it, in 99.2% of the cases—followed through on the punishment he had promised a defendant at the time of placing a defendant on probation. There is nothing in this record to suggest that applicant's case falls into the .8% of the cases in which Judge Baraka did not follow his normal routine.

Judge Baraka promised applicant at the original plea hearing that he would impose the maximum punishment of 20 years if applicant failed to report to his probation officer. He reminded applicant at the adjudication hearing of this earlier colloquy, and applicant agreed "You said you'd give me twenty years" if applicant failed to report to his probation officer. Judge Baraka then sentenced applicant to 20 years imprisonment, exactly as he had previously promised. There is nothing in the habeas record on remand which contradicts this promise of 20 years' imprisonment and its imposition should applicant fail to report to his probation officer.[10]

▮ As noted above, a trial court's arbitrary refusal to consider the entire range of punishment in a particular case violates due process.[11] A trial judge may certainly impress upon a prospective probationer the seriousness of the *possible* consequences of a failure to abide by the terms and conditions of probation, but it is an altogether different thing to promise to impose the maximum punishment if a prospective probationer fails to abide by the terms of probation and then carrying through on that promise without "actually

---

10. Judge Baraka's testimony, that *if* a defendant provided particularly persuasive mitigating evidence then he might back away from his original "promise" to revoke probation and send the probationer to the penitentiary, does not detract from the force of his original promise that he would, if he *did* revoke probation, sentence applicant to 20 years.

11. *See McClenan v. State,* 661 S.W.2d 108, 110 (Tex.Crim.App.1983); *see also Earley v. State,* 855 S.W.2d 260, 262–63(Tex.App.-Corpus Christi 1993), *pet. dism'd,* 872 S.W.2d 758 (Tex.Crim.App.1994) (concluding that Judge Baraka prejudged punishment when adjudi-

cating defendant); *Jefferson v. State,* 803 S.W.2d 470, 472 (Tex.App.-Dallas 1991, pet. ref'd) (same); *see also Gonzales v. Johnson,* 994 F.Supp. 759, 762 (N.D.Tex.1997) (granting federal habeas relief after concluding that Judge Baraka prejudged punishment when adjudicating defendant; stating that "[a] 'neutral and detached' decisionmaker does not prejudge evidence he has not seen.... Thus, a defendant is entitled a probation revocation hearing before a judicial officer who has not predetermined that probation should be revoked or that a particular punishment should be imposed") (citations omitted).

*consider*[ing] the evidence presented at the revocation hearing."[12]

Given the state of this record, we conclude that the record continues to support Judge King's original habeas finding—also based on a reading of the very same statement of facts from the original plea hearing—that "this case is another example of Judge Baraka pre-judging punishment."[13]

Although we adopt the trial court's finding that applicant failed to show that Judge Baraka prejudged the decision of *whether* to revoke probation, we find that the record does not support the further finding that Judge Baraka did not pre-judge the punishment to be assessed once he did decide to revoke probation.

For this reason, we grant relief and remand this case to the trial court at the point immediately after the adjudication of guilt. The trial court should re-assess an appropriate sentence within the entire punishment range. Copies of this opinion shall be sent to the Texas Department of Criminal Justice, Institutional Division.

HERVEY, J., dissented.

KELLER, P.J., joined by HERVEY, J., filed a dissenting opinion.

WOMACK, J., filed a dissenting opinion.

KEASLER, J., joined by KELLER, P.J. and HERVEY, J., filed a dissenting opinion.

KELLER, P.J., dissenting in which HERVEY, J. joined.

In *Hull v. State*, we held that a defendant who failed to object to the imposition of "zero tolerance" probation forfeited his right to complain about it on appeal.[1] In that case the defendant made no objection at the time of the imposition of probation, when the remarks were made, or at the time of revocation. In this case, applicant likewise failed to object at trial. He has, therefore, forfeited his right to complain that Judge Baraka pre-judged his punishment.

Applicant, however, also raises an ineffective assistance of counsel claim, claiming that trial counsel's failure to object, and appellate counsel's failure to complain about the failure to object, constitute deficient performance.

If Judge Baraka did not pre-judge applicant's punishment, then counsel was not ineffective for failing to object. We have before us findings of fact from the original habeas judge and the subsequent habeas judge. The original habeas judge—Judge King—found that applicant was entitled to relief. The subsequent judge—Judge Stricklin—found that applicant was not entitled to relief. Judge King based his recommendation on the record without a hearing. Judge Stricklin held a hearing at which Judge Baraka testified. To the extent that there is a difference of opinion between the two habeas judges, and that difference rests upon a determination of Judge Baraka's credibility, we should defer to the judge who heard Judge Baraka's testimony.

Judge Stricklin found that Judge Baraka would have permitted applicant to explain

---

**12.** *Gonzales,* 994 F.Supp. at 764.

**13.** At the hearing on remand, applicant also called a Dallas County criminal defense attorney who had investigated numerous cases in which defendants had alleged prejudgment of punishment by Judge Baraka. This attorney claimed that the judge maintained a "hit list" with which he would keep track of the sentences he had "promised" defendants and he

would assess those "promised" sentences upon revocation of probation. This attorney stated that there were "hundreds" of cases in which Judge Baraka had prejudged punishment.

**1.** *Hull v. State,* 67 S.W.3d 215 (Tex.Crim.App. 2002).

why he violated the conditions of his probation, but applicant failed to do so. Judge Stricklin also found that bias, if any, came from what Judge Baraka learned about applicant from the original plea and the revocation hearing. The record supports these findings, as well as Judge Stricklin's finding that Judge Baraka did not violate applicant's constitutional rights. Because there was no violation of applicant's constitutional rights, trial counsel's failure to object did not constitute ineffective assistance of counsel.

I respectfully dissent.

WOMACK, J., dissenting.

Although I agree with the court's opinion (Parts I and II, *ante*) that the applicant's failure to appeal does not prevent his seeking relief by the writ of habeas corpus, I would defer to the district judge's factual conclusion that the applicant failed to prove that Judge Baraka prejudged his punishment. I agree with the "Burden of Proof" portion of Judge Keasler's opinion (*post*, at 461–62).

When a judge grants probation and warns the defendant that the court will impose the maximum sentence if the defendant violates the conditions of probation, the judge could be stating for the record a plan to prejudge the outcome of a subsequent hearing of a motion to revoke probation. Or the judge's statement may be a rhetorical device to impress on the defendant the importance of complying with the conditions. The appellate record of that proceeding may not, and probably will, not show whether the judge's statement was one or the other.

If, in any such case, the court did impose the maximum sentence when a defendant was proved to have violated the conditions, the sentence does not, by itself, show that there was a prejudgment of punishment. Other facts in the appellate record might call for an appellate court to vacate the sentence and remand the case to the trial court. But if there were no other indications of prejudgment in the appellate record, the question could not be resolved in the appellant's favor. In such a case, the writ of habeas corpus would be the procedure by which a defendant could go outside the record for additional evidence.

Two types of evidence, in particular, would be useful to the resolution of the issue. First, an examination of other cases could show in what types of cases, and how often, the judge threatened to impose the maximum sentence, and in what types of cases, and how often, the judge actually assessed that punishment. A second source of relevant information beyond the appellate record could be the judge's own testimony on the issue.

In the convicting court, a successor judge found that Judge Baraka exhibited a pattern of prejudgment of punishment. The judge noted that in several cases, Judge Baraka had told defendants, when placing them on probation, that if they "messed up" he would impose the maximum sentence at their revocation hearing, and that he did so. But from evidence introduced at the hearing, the court found that in this case Judge Baraka imposed the maximum sentence based on what he "learned about the applicant from what was before him during the original plea and revocation hearing." I believe the record supports the judge's conclusion.

KEASLER, J., dissenting in which KELLER, P.J., and HERVEY, J., joined.

Brown's due process claim fails for three reasons: (1) he forfeited any claim of error by his failure to object at trial; (2) he forfeited his claim by failing to raise it on direct appeal; and (3) he fails to satisfy his

burden of proof. Because the majority holds otherwise, I dissent.

## Preservation of Error

Brown forfeited this claim of error by failing to object at trial. Just three years ago, in *Hull v. State*,[1] this Court made clear that a claim that a trial judge prejudged the defendant's sentence is forfeited by the failure to object at trial. *Hull* was a direct appeal case, but we have indicated that rules regarding preservation of error apply on habeas as well.[2] The majority attempts to distinguish this case from *Hull* on the grounds that, in *Hull,* the defendant "was fully aware of the court's policy ... and did not object," while in this case, the judge imposed the maximum sentence "without any explanation for its basis."[3]

But the majority itself disagrees with this statement. Later in its opinion, the majority summarizes the facts as follows: "Judge Baraka promised applicant at the original plea hearing that he would impose the maximum punishment of 20 years if applicant failed to report to his probation officer. He reminded applicant at the adjudication hearing of this earlier colloquy, and applicant agreed 'You said you'd give me twenty years' if applicant failed to report to his probation officer. Judge Baraka then sentenced applicant to 20 years imprisonment, exactly as he had previously promised."[4] Based on this rendition of the record, Brown was "fully aware" that Judge Baraka was sentencing him to 20 years because of an earlier promise. As a result, he could have objected.

Indeed, Brown himself recognizes this. He contends that the trial court violated his due process rights "by failing to and/or refusing to consider the full range of punishment by sentencing petitioner using a predetermined sentencing procedure." He quotes pages from the record where Judge Baraka says such things as, "You're not asking me to do anything but what I said, aren't you? I told you what I was going to do if you did this, didn't I? You remember that long conversation I had when I put you on probation? I told you what I'll do about it if you did."[5] Brown argues that this record "reflects Judge Baraka made good on a promise in which petitioner did not have anything to say about the punishment. Without considering any evidence, not considering the full range of punishment."[6] He also complains that counsel failed to object to the court's predetermined sentencing procedures, "especially when Judge Baraka repeatedly made it clear that he would sentence petitioner according to a promise he made in 1989."[7] There is no reason why Brown could not have objected.

The majority also finds that an objection was not necessary because in this case, "as with many ineffective assistance of counsel claims, the trial record, by itself, is not necessarily adequate for the defendant to object and present a valid constitutional claim at the time of the conduct."[8] With this statement, the majority confuses two different points of law. We have held that, when a defendant argues that he received ineffective assistance of counsel, the trial

---

1. 67 S.W.3d 215 (Tex.Crim.App.2002).

2. *Ex parte Pena,* 71 S.W.3d 336, 337 (Tex. Crim.App.2002).

3. *Ante,* op. at 453 n. 3.

4. *Id.* at 456.

5. Writ record at 4.

6. *Id.*

7. *Id.* at 452.

8. *Ante,* op. at 453 n. 3.

record may be inadequate to resolve his claim.[9] This is not the same as holding that the defendant need not object to errors occurring at trial. Regardless of whether a record is adequate to resolve a claim, objections are still required to preserve trial errors. Of course, a defendant need not object to receiving ineffective assistance of counsel, since that would be impossible—it would require a deficiently-performing lawyer to lodge an objection against his own performance. A claim of prejudgment of sentence is obviously different. It is not impossible to object to this error.

Finally, excusing Brown's failure to object creates an odd loophole in the law. If litigants have to object to obtain relief on direct appeal, but do not have to object to obtain relief on habeas, then those who fail to object will simply bypass direct appeal and seek relief on habeas. But if the claim need not be raised on direct appeal, then *Hull's* holding requiring an objection becomes meaningless.

I believe an objection was required to preserve this error and Brown's failure to do so waived it.

### Appellate Remedy

Brown also forfeited this claim by failing to raise it on direct appeal. We have long held that "[t]he Great Writ should not be used to litigate matters which should have been raised on appeal."[10] We recently reiterated in *Ex parte Townsend*[11] that "even a constitutional claim is forfeited if the applicant had the opportunity to raise the issue on appeal" and failed to do so.

The majority concludes that this case qualifies as an "exception in which a habeas applicant may raise his due process claim for the first time by writ of habeas corpus. As with the vast majority of ineffective assistance of counsel claims, the trial record is insufficient to allow an appellate court to resolve the issue."[12] With this, the majority creates an exception that swallows the rule.

The exception to which the majority refers was first articulated in *Ex parte Torres*.[13] We were addressing the rule that "a claim which was previously raised and rejected on direct appeal is not cognizable on habeas corpus."[14] We concluded that "this doctrine should not be applied where direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding."[15]

We then explained in some detail why a claim regarding ineffective assistance of counsel came within this exception:

> In most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim. Moreover, the inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims. The very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim. Moreover,

9. *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim.App.1997).

10. *Ex parte Banks*, 769 S.W.2d 539, (Tex. Crim.App.1989); *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex.Crim.App.1978).

11. 137 S.W.3d 79, 81 (Tex.Crim.App.2004).

12. *Ante,* op. at 453.

13. 943 S.W.2d at 475.

14. *Ex Parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim.App.1984).

15. *Torres,* 943 S.W.2d at 475.

the trial record ordinarily does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains. While expansion of the record may be accomplished in a motion for new trial, that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point. Further, mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if trial counsel remains counsel during the time required to file such a motion. Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims.[16]

Since then, we have only applied the *Torres* exception to claims regarding ineffective assistance of counsel,[17] although we have expanded it to include situations in which the applicant fails to raise the claim on direct appeal.[18]

The majority applies the *Torres* exception to this case because, according to the majority, in this case "the trial record is insufficient to allow an appellate court to resolve the issue."[19] The problem with this rationale is that it considers this case individually instead of considering prejudgment claims generally. That is, the

*Torres* exception should not be applied every time a particular litigant is unable to prove his claim on direct appeal. Instead, it should be limited to categories of claims which, as a whole, may not be proved on direct appeal. Otherwise, it will be applied whenever a defendant has a claim which is not supported by the trial record, and the *Torres* exception will completely swallow the *Banks* and *Acosta* rules.

Our courts of appeals have made clear that a claim regarding prejudgment of sentence,[20] even one concerning Judge Baraka himself,[21] may be considered (and found meritorious) on direct appeal. If those records were adequate to evaluate a prejudgment claim, then this one is, too. As a result, the *Torres* exception should not apply to a claim regarding prejudgment of sentence. Therefore, Brown procedurally defaulted his claim by failing to raise it on direct appeal.

### Burden of Proof

Finally, Brown fails to satisfy his burden of proof. We have repeatedly held that the burden of proof in a habeas application is on the applicant to prove his factual allegations by a preponderance of the evidence.[22] But today, the majority puts the burden of proof on the State to show that Judge Baraka did not prejudge the sen-

16. *Id.* (internal citations omitted).

17. *Ex Parte White*, 160 S.W.3d 46, 49, n. 1, 2004 WL 2179272 *1 n. 1 (Tex.Crim.App. 2004); *Ex parte Nailor*, 149 S.W.3d 125, 130–31 (Tex.Crim.App.2004); *Ex parte Varelas*, 45 S.W.3d 627, 630 (Tex.Crim.App.2001); *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999).

18. *White*, 160 S.W.3d at 49, n. 1, 2004 WL 2179272 *1 n. 1.

19. *Ante*, op. at 453.

20. *Howard v. State*, 830 S.W.2d 785 (Tex. App.-San Antonio 1992, pet. ref'd).

21. *Earley v. State*, 855 S.W.2d 260 (Tex.App.-Corpus Christi 1993, pet. dism'd); *Jefferson v. State*, 803 S.W.2d 470 (Tex.App.-Dallas 1991, pet. ref'd).

22. *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim.App.1995); *see also Ex parte Cruz*, 739 S.W.2d 53, 59 (Tex.Crim.App.1987); *Ex parte Salinas*, 660 S.W.2d 97, 101 (Tex.Crim.App. 1983); *Ex parte McWilliams*, 634 S.W.2d 815, 818–19 (Tex.Crim.App.1980); *Ex parte Alexander*, 598 S.W.2d 308, 309 (Tex.Crim.App. 1980); *Ex parte Sanders*, 588 S.W.2d 383, 385 (Tex.Crim.App.1979); *Ex parte Rains*, 555 S.W.2d 478, 481 (Tex.Crim.App.1977).

tence. The majority presumes that pre-judgment occurred in the face of no evidence to the contrary.[23] But it is Brown's job to produce evidence that demonstrates prejudgment by a preponderance of the evidence. It is not the State's job to prove that no prejudgment occurred.

The majority concedes that, when we remanded this application, "the bare record could [have] support[ed] a finding of punishment prejudgment ... [but] there might also [have] be[en] other reasons, not apparent on the record, which would [have] explain[ed] Judge Baraka's sentence."[24] So at that time, Brown had not satisfied his burden of proof. He had shown a possibility of prejudgment, but he had not shown prejudgment by a preponderance of the evidence. Then, at the evidentiary hearing on remand, the majority concedes, "Judge Baraka forthrightly acknowledged that he could not remember anything about this case."[25] Obviously, then, Brown was still unable to satisfy his burden of proof after the remand.

The majority finds significance in the fact that Judge Baraka testified that he "would have considered mitigating evidence in deciding whether to revoke probation."[26] The majority says that this testimony "tells us nothing ... about whether Judge Baraka carried through on his original promise to applicant to impose the maximum sentence...."[27] This is true. And as a result, Brown fails to satisfy his burden of proof. As noted, Judge Baraka remembered nothing about this particular

case. The fact that Judge Baraka testified that he "would have considered mitigating evidence in deciding whether to revoke probation" does not mean that Judge Baraka would not have considered mitigating evidence in deciding what sentence to impose. Nothing in Judge Baraka's testimony demonstrates that he prejudged Brown's sentence.

Brown fails to satisfy his burden of proof, and the majority errs in placing the burden of proof on the State instead of Brown.

### Conclusion

Brown forfeited any claim of error by failing to object at trial. He forfeited his claim by failing to raise it on direct appeal. And he fails to satisfy his burden of proof. Because the majority holds otherwise, I dissent. I also note that, despite the majority's reference to ineffective assistance claims, the majority does not reach Brown's claims of ineffective assistance of counsel. Neither do I. The majority grants Brown relief on his prejudgment claim, and I dissent to that holding.

---

23. *Ante,* op. at 456 ("Judge Baraka's testimony does not support the conclusion that he did not prejudge applicant's punishment."; "There is nothing in this record to suggest that applicant's case falls into the .8% of the cases that Judge Baraka did not follow his normal routine."); at 456 ("There is nothing in the habeas record on remand which con-

tradicts this promise of 20 years punishment and its imposition ...").

24. *Id.* at 452.

25. *Id.* at 455.

26. *Id.*

27. *Id.*