

# NUMBER 13-13-00548-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**RUSSELL GLEN HORELICA,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

### On appeal from the 329th District Court
### of Wharton County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Russell Glen Horelica appeals his conviction for injury to a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.04(e) (West, Westlaw through 2013 3d C.S.). By a single issue on appeal, appellant argues that the trial court violated his right to due process by sentencing him to ten years of confinement in the Texas

Department of Criminal Justice, Institutional Division, when it revoked his community supervision for this offense. *See* U.S. CONST. amend. XIV. According to appellant, the trial court failed to consider the entire punishment range—two to twenty-years—and instead sentenced him to ten years' confinement because that was the term of his community supervision. We affirm.

## I. BACKGROUND

On May 27, 2010, appellant pleaded nolo contendere to an information alleging that he had committed injury to a child. Pursuant to a plea-bargain agreement, he was placed on deferred-adjudication community supervision for a term of ten years.

On August 12, 2010, the trial court found that appellant violated the terms and conditions of his probation. The trial court adjudicated him guilty of the offense of injury to a child and revoked his deferred-adjudication community supervision. The trial court suspended a ten-year prison sentence and placed appellant on community supervision for a term of ten years.

On February 6, 2012, the trial court issued a "Judicial Summons" commanding appellant to appear for a determination of whether a revocation motion should be filed for the following alleged violation: "Defendant admitted to Marihuana use on February 2, 2012 (Admission Form signed by Defendant on 02/06/12)." On February 21, 2012, a visiting judge presided over the summons proceedings and admonished appellant that the State would move to revoke his community supervision in the event he again violated community-supervision conditions. At the time of the summons, appellant was warned he could face prison time in the event of revocation.

2

On May 30, 2013, the State moved to revoke appellant's community supervision, alleging appellant violated three of his community-supervision conditions.[1] At the revocation hearing, appellant's community-supervision officer testified that appellant twice admitted to her that he had used marihuana while on community supervision. In this regard, the State presented two "Admission Forms" wherein appellant admitted to using and consuming an illegal drug; namely, marihuana, on each February 2, 2012 and March 18, 2013. The trial court found that appellant violated the terms and conditions of his community supervision and heard evidence on sentencing.[2]

During the punishment phase, the State presented evidence that appellant used marihuana recreationally, but that he was not a drug addict in need of rehabilitation. Appellant presented evidence from two family members that appellant was a caretaker for his elderly mother. Appellant's mother had suffered a disabling stroke and lived alone with appellant prior to his arrest. After listening to the evidence and counsels' closing arguments, the trial court sentenced appellant to ten years' confinement. In sentencing appellant, the trial court stated, "Your original agreement when you were placed on

---

[1] In its motion, the State alleged appellant:

[1] failed to . . . totally abstain from the use or consumption of . . . any kind or any substance capable of or calculated to cause intoxication or the illegal use of any controlled substance, to-wit: the defendant on or about February 6, 2012, admitted to CSO Linda Kerzee and CSO Rebecca Crabb to the use of marihuana on February 2, 2012; . . . [2] failed to . . . totally abstain from the use or consumption of . . . any kind or any substance capable of or calculated to cause intoxication or the illegal use of any controlled substance, to-wit: the defendant on or about May 23, 2013, admitted to CSO Linda Kerzee and CSO Rebecca Crabb to the use of marihuana on May 18, 2013; . . . [3] On or about the 2nd day of February, 2012, defendant did violate a lawful order of the judge of the 329th Judicial District Court, Wharton County, Texas, issued on [or] about the 12th day of August, 2010.

[2] The trial court found the first two counts to be true, but concluded that the third count was not true because it did not include the requisite specificity.

3

probation was a ten-year sentence.   I hereby sentence you to ten years . . . ."   Appellant did not object to the sentence in the trial court and did not file a motion for new trial complaining of the sentence.

## II.  DUE PROCESS CHALLENGE

By his sole issue, appellant argues that the trial court violated his "due process rights" by not considering the entire punishment range for his offense.   *See* U.S. CONST. amend. XIV.   The State argues (1) appellant did not preserve error for review because he failed to object in the trial court; and (2) appellant has not clearly demonstrated the trial court arbitrarily failed to consider the full punishment range.   We agree with the State.

## A.   Standard of Review and Applicable Law

Whether the trial court denied appellant due process in sentencing is a question of law which we review de novo.   *See Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005) (en banc).   A trial court denies due process if it arbitrarily refuses to consider the entire punishment range for an offense or refuses to consider the evidence and imposes a predetermined punishment.   *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd); *see also Cummings v. State*, 163 S.W.3d 772, 776 (Tex. App.—Texarkana 2005, pet. ref'd).   "Absent a clear showing of bias, a trial court's actions will be presumed to have been correct."   *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1993, pet. dism'd).   A 'defendant is entitled to a probation revocation hearing before a judicial officer who has not predetermined that probation should be revoked or that a

4

particular punishment should be imposed.' *Ex parte Brown*, 158 S.W.3d at 454 (quoting *Gonzales v. Johnson*, 994 F. Supp. 759, 762 (N.D. Tex. 1997)).

In order to preserve review of such a complaint, a timely objection must be made in the trial court. *Cummings*, 163 S.W.3d at 776; *Teixeira*, 89 S.W.3d at 192; *see* TEX. R. APP. P. 33.1. "This rule ensures that trial courts are provided an opportunity to correct their own mistakes at the most convenient and appropriate time—when the mistakes are alleged to have been made." *Hull v. State*, 67 S.W.3d 215, 218 (Tex. Crim. App. 2002).

In *Hull v. State*, the Texas Court of Criminal Appeals held that a defendant who failed to object to the trial court's imposition of a "zero tolerance" policy toward probation forfeited his right to complain on appeal. *Id.* at 217. In *Hull*, the trial court informed the defendant "in no uncertain terms" that it would revoke his probation and impose a prison sentence if he violated any term of his probation. *Id.* at 217–18. The record showed that the defendant understood the court's "zero tolerance" policy to be overriding and controlling and that the defendant failed to object at the revocation hearing. *Id.* at 218. Accordingly, appellant could not complain for the first time on appeal that the trial court denied him due process by failing to consider the entire punishment range because appellant did not preserve that complaint for appellate review. *Id.*

Three years later, the Court of Criminal Appeals did not find waiver of a similar issue, despite the defendant's failure to object to the trial court's sentence. *See Ex parte Brown*, 158 S.W.3d at 453 n.3. In *Brown*, prior to the revocation hearing, the trial court promised to impose the maximum sentence in the event of probation revocation and subsequently, at the revocation hearing, imposed "the maximum sentence without any

explanation for its basis." *Id.* It was impossible to determine from the record on direct appeal whether the trial court imposed the maximum sentence for "very good reasons," such as the nature of the original offense and the seriousness of the probation violations, or whether the trial court arbitrarily imposed the maximum sentence. *Id.* In *Brown,* the defendant filed an application for writ of habeas corpus seeking review of the trial court's violation of his due process rights by prejudging his punishment.

In *Brown*, the Court of Criminal Appeals held habeas review was proper because the trial record, alone, was inadequate to allow the "defendant to object and present a valid constitutional claim at the time of [the trial court's] conduct." *Id.* "As with the vast majority of claims of ineffective assistance of counsel, the trial record [was] insufficient to allow an appellate court to resolve the issue." *Id.* at 453. The *Brown* Court elaborated that extra-record evidence of whether the trial court had a pattern of prejudging punishment and the trial court's own statements and testimony concerning whether it prejudged punishment would be particularly useful in resolving a due-process issue concerning prejudgment of punishment. *Id.* The *Brown* Court distinguished *Hull* as being a case in which the prejudgment of punishment was clearly established in the trial record so that the defendant could object in the trial court and then present the complaint by direct appeal. *See id.* at 453 n.3.

## B. Discussion

In this case, appellant argues that the visiting judge's warning ("judicial summons") that a motion to revoke would be filed if he violated the conditions of probation again and the trial court's remarks at sentencing show the trial court either prejudged punishment or

erroneously believed it was bound to impose a ten-year sentence because appellant's community-supervision was for a ten-year term. Even assuming for the sake of argument that appellant is correct that the record shows the trial court prejudged his punishment, appellant waived error by failing to raise this complaint in the trial court. *See* TEX. R. APP. P. 33.1; *Hull*, 67 S.W.3d at 218.

However, we agree with the State that this record does not show the trial court necessarily prejudged punishment. *See Ex parte Brown*, 158 S.W.3d at 453 n.3 ("In this particular situation . . . the trial record . . . is not necessarily adequate for the defendant to object and present a valid constitutional claim at the time of conduct."). "A trial judge may certainly impress upon a . . . probationer the seriousness of the *possible* consequences of a failure to abide by the terms and conditions of probation" so long as he does not prejudge the outcome of a future revocation hearing. *Id.* at 456. Here, the judicial summons appears to be a legitimate warning of a possible consequence for further violating the community-supervision terms. Appellant was told the State would file a motion revoke and he *could* face a prison sentence in the event of revocation.

This leaves the trial court's remark at sentencing, "Your original agreement when you were placed on probation was a ten-year sentence. I hereby sentence you to ten years . . . ." Taken alone, this statement is not necessarily indicative of a predetermined sentence, and other evidence was taken during the punishment hearing. The record on direct appeal, however, is insufficient to allow this Court to determine whether this

7

statement shows any predetermination of appellant's sentence. [3]  *See id.* at 453.

Appellant's sole issue on appeal is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of May, 2014.

---

[3]  We note that the record reflects that the trial court actively listened to the evidence presented at the revocation hearing, promptly ruling on objections and attentively following the proceeding.  While listening to the sentencing evidence, the trial court asked the State's witness whether a substance abuse index test had been performed on appellant.  While the witness could not testify as to the result of such a test, she believed one had been performed and went on to explain to the trial court that appellant was a recreational drug user as opposed to a drug addict.