# NO. 12-21-00125-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MARQUIST EARHTEL WILLIAMS, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Marquist Earhtel Williams appeals the trial court's order revoking his community supervision. In one issue, Appellant argues that the trial court violated his constitutional rights to due process and due course of law by not considering the entire punishment range at his sentencing. We affirm.

## BACKGROUND

On October 18, 2018, a grand jury sitting in Smith County, Texas returned an indictment against Appellant for aggravated assault with a deadly weapon, a second-degree felony, punishable by not less than two but not more than twenty years of imprisonment.[1] Appellant reached a plea agreement with the State for seven years deferred adjudication community supervision. On January 19, 2019, Appellant entered a plea of "guilty" to the charged offense and "true" to the allegation that he used or exhibited a deadly weapon in the commission of the offense. On February 19, the trial court held a sentencing hearing and elected to follow the

---

[1] TEX. PENAL CODE ANN. §§ 12.33(a) (West 2019) ("An individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term not more than 20 years or less than 2 years."); 22.02(a) (2) (West Supp. 2021) ("A person commits an offense if the person commits assault...and the person...uses or exhibits a deadly weapon during the commission of the assault."), (b) ("An offense under this section is a felony of the second degree...").

State's punishment recommendation, deferred a finding of guilt, and placed Appellant on community supervision for seven years.

On January 7, 2020, the State filed a motion to adjudicate Appellant's guilt alleging that Appellant violated the terms and conditions of his community supervision by using and possessing marijuana in August and November of 2019. At the hearing on the motion, Appellant pleaded "true" to the State's allegations, and requested to go to a substance abuse treatment facility. The State asked the trial court to proceed to a finding of "guilt," revoke Appellant's community supervision, and sentence him to seven years of imprisonment. The trial court entered an order modifying Appellant's original terms of community supervision by extending the total length of supervision to ten years and ordering Appellant to successfully complete treatment at a Substance Abuse Felony Punishment Facility (SAFPF). The trial court made the following comments to Appellant while explaining its decision:

> All right. Court finds, based upon the evidence presented and the defendant's plea of true, that the State has met their burden of proving their motion to adjudicate guilt. That motion's granted.
>
> The defendant's deferred probation is revoked for his numerous violations.
>
> The Court finds, based upon his original plea of guilty and evidence presented, that he's found guilty of the charge in the indictment, that being the second-degree felony charge of – well, actually, I can't make an affirmative finding, so that's really not an option.
>
> All right. Well, I'll leave him on deferred, actually. I'll set aside the finding.
>
> The reason I can't do what I intended to do is that if I make an affirmative finding on the deadly weapon, which you stated and stipulated to before, I can't put you on probation.
>
> So I will leave it on deferred. I will extend it to a full ten-year deferred adjudication probation on the same terms and conditions. But I want to make sure you know, Mr. Williams, that I'm making a note in my presentence of what I intended to do today.
>
> So if you come back, the best you will do, if they can prove you violated your probation, will be a ten-year sentence in the penitentiary, depending on whatever it is that they are able to establish – I hope you don't come back.
>
> But if you do come back, I always want people to know the consequences, in the hopes that will make them not come back. And that is the best you will do, is a ten-year sentence and could go all the way up to the max of 20.
>
> Because I never know what people are going to do in the interim. Sometimes they go out and commit even new crimes. And, of course, that all goes in the mix of deciding what an appropriate punishment is.

> All right. Court is not revoking the defendant's probation, in light of what the law requires me to do. So it will be moved over to a ten-year deferred adjudication probation, with the same terms and conditions and adding the SAFP as a condition of this new probation.

Appellant completed his inpatient treatment and transitioned into the aftercare program. On May 11, 2021, the State filed a subsequent motion to adjudicate Appellant's guilt, alleging that Appellant possessed and consumed alcohol and marijuana, along with several other technical violations. Appellant appeared before the trial court and entered pleas of "true" to the allegations. The State offered Appellant's signed stipulation of evidence. Appellant elected to present no evidence at the hearing. In closing arguments, the State asked the trial court to proceed to a final determination of guilt, revoke Appellant's community supervision, and assess a ten year prison sentence. Appellant's counsel asked the trial court to order further drug treatment and extend his community supervision. The trial court elected to find Appellant "guilty," revoke his community supervision, and sentence him to ten years of imprisonment. The trial court made the following remarks while sentencing Appellant:

> Mr. Williams, you probably don't recall what I told you when you were here before, do you?
>
> ...
>
> Well, what I—I made notes. Because I have too many of these, really, to remember all the little details of all of them. But my notes show here that I told you – well, I started to give you ten years probated for ten years last time. But because of the deadly weapon, I couldn't do that. I had to just extend you out to the maximum term of ten years.
>
> So your lawyer's argued for more extension. I can't extend you any more than I extended you before. And I told you that if you came back on another revocation, you were more likely to get more than the ten years I was going to give you then. So I'm not going to do that. I'm going to follow the State's recommendation.
>
> ...
>
> The Court does find the ten-year sentence to be appropriate in the case, which the Court assesses, along with any unpaid court costs.

The trial court entered a written order convicting Appellant of aggravated assault with a deadly weapon and sentencing him to ten years of imprisonment. This appeal followed.

## DUE PROCESS

In Appellant's sole issue, he argues that the trial court violated his constitutional rights to due process and due course of law because it did not consider the full range of punishment when it imposed a predetermined sentence. The State did not file a response.

**Standard of Review and Applicable Law**

Due process requires a neutral and detached hearing body or officer. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761, 36 L. Ed. 2d 656 (1973). It is a denial of due process for a trial court to arbitrarily refuse to consider the entire range of punishment for an offense or to refuse to consider the evidence and impose a predetermined punishment. *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983), *overruled on other grounds*, *DeLeon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004). In the absence of a clear showing of bias, we will presume the trial judge was a neutral and detached officer. *Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.–Corpus Christi 1993, pet. dism'd). Bias is not shown when (1) the trial court hears extensive evidence before assessing punishment, (2) the record contains explicit evidence that the trial court considered the full range of punishment, and (3) the trial court made no comments indicating consideration of less than the full range of punishment. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

**Analysis**

Appellant argues that "[b]y referencing [its] notes from the previous hearing, the trial court acknowledged that he promised a minimum sentence of ten years." Appellant analogizes this case to *Ex Parte Brown*, arguing that "[n]early identical conduct has been deemed a failure to consider the full range of punishment." 158 S.W.3d 449, 454 (Tex. Crim. App. 2005).

In *Brown*, the Court of Criminal Appeals held the trial judge's admonition to the applicant that it would impose the maximum sentence if the applicant violated his community supervision did not by itself show prejudgment of punishment. *Id*. at 453. The Court held that such an admonition must be accompanied by additional evidence or record support to establish a trial judge's bias or failure to consider the entire range of punishment. *Id*. *Brown* was a post-conviction habeas proceeding, and the record contained additional evidence beyond the trial judge's initial admonition that was useful in resolving the due process issue of prejudgment of punishment. *Id*. Specifically, the record included evidence that the trial judge assessed the maximum sentence in other cases after making similar threats in addition to the trial judge's own

4

testimony that he sentenced defendants to prison for failing to report 99.2 percent of the time. *Id.* at 453. The trial judge testified that he did not remember anything about the applicant's case, and based on his review of the reporter's record from the adjudication hearing, "it looked to him as if he was simply making good on a promise he had made during the original plea hearing." *Id.* at 455. Based on this testimony, the Court concluded, "[t]here is nothing in this record to suggest that applicant's case falls into the .8% of the cases in which [the trial judge] did not follow his normal routine." *Id.* at 456.

Appellant also cites ***Earley v. State*** and ***Jefferson v. State***, 803 S.W.2d 470 (Tex. App.—Dallas 1991, pet. ref'd) to support his contention. The appellants in both ***Earley*** and ***Jefferson*** were sentenced by the same trial judge as the appellant in ***Brown***. 855 S.W.2d at 261, fn.1; 803 S.W.2d at 471. In ***Earley***, the trial judge placed the appellant on probation and told him:

> [I]f you foul up or do something like that, then I'll bring you back in here and I'll revoke these other cases and send you down to the penitentiary to serve some time; you understand me ... This is giving you a chance, but if you foul up, I want you to know that I'll probably set your punishment right at the top level of the punishment range, and I won't have any sympathy for you, because I'm giving you every chance that I possibly can to straighten yourself out ... If you foul up, you're coming back before me and I'll tell you right now I'm probably going to give you the maximum. I may not, but you have that open for me if I desire to do so. You understand what I'm saying?

855 S.W.2d at 262. When the appellant returned for a revocation hearing, before any evidence was presented, the trial judge stated, "I am just upset that, Bradley, I'm just upset that you did a third-degree felony. I would rather have seen you with a first-degree, because I would like to give you life." *Id.* The appellant pleaded "true" to the allegations and the State presented testimony from the community supervision officer. *Id.* The appellant testified on his own behalf. *Id.* At the conclusion of the hearing, the appellant was sentenced to the maximum term of imprisonment for each offense, with the sentences to run consecutively. *Id.* The court held that the appellant's right to due course of law was violated because the trial court predetermined his sentence. *Id.* However, the court explained that the trial judge's initial comments were not, in isolation, problematic:

> We believe the [initial] remarks...indicated a willingness to listen to the evidence and not necessarily prejudge the case. If the record contained no additional comments from [the trial judge], we would not hold that [the trial judge] clearly prejudged appellant.

*Id.* Rather, it was the second comment that the court found "in combination with his earlier, comments, clearly shows that...[the trial judge] effectively decided cases before listening to the evidence and puts his prior comments into perspective." *Id.* at 262-63.

In *Jefferson*, the appellant asserted the trial judge predetermined his punishment at the hearing placing him on deferred adjudication because the trial judge told him the maximum sentence would be imposed if he violated any term or condition of his probation. 803 S.W.2d at 471. The appellate court agreed, noting a colloquy at the appellant's motion for new trial hearing, at which the trial judge, over the appellant's objection, "developed the following testimony regarding the clarity of the court's promise to assess a certain punishment period and the court's fulfillment of that promise[:]"

> The court: So I didn't impress you at all?
>
> The Defendant: No, sir. I remember you saying if I didn't report and pay my probation fees that I will [sic] get the maximum term of 20 years and that's exactly what I got.
>
> The court: And that is exactly what you got, isn't it?
>
> The Defendant: That's right.
>
> The court: And that's what the Court said it would do, didn't it?
>
> The Defendant: Yes, sir.

*Id.* Observing that "[the trial judge's] own questions [to the appellant] confirm he assessed a promised punishment, apparently to maintain his credibility," the court concluded that the judge's actions in emphasizing the appellant's knowledge of the judge's promise combined with the judge's consultation with the community supervision officer during the hearing, to confirm that the officer noted on the appellant's file that the judge promised to assess the maximum sentence, established that the judge prejudged the case. *Id.* at 472.

Appellant also relies on *Cabrera v. State*, 513 S.W.3d 35 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In that case, prior to his trial, the trial court admonished the appellant "if you wanted to come to me for punishment, than I would be willing to consider assessing your punishment at 30 days in jail." *Id.* at 37. The appellant persisted with his decision to exercise his right to a jury trial for a determination of guilt, but elected to have the trial court assess punishment. *Id.* The trial court told the appellant, "I hope you're not under any illusion you are going to get 30 days after trial, are you?" to which appellant responded "[n]o, sir." *Id.* The

appellant was found "guilty" by the jury and trial court assessed his punishment at one hundred and eighty days in the county jail. *Id.* The 14th Court of Appeals held that the trial court violated the appellant's right to due process because the record indicated the trial court arbitrarily refused to consider the full range of punishment when the appellant elected to exercise his right to a trial:

> The trial judge made the comment in question immediately after appellant asserted his Constitutional right to a jury trial. This is not a case in which the trial court's comments are taken out of context...
>
> This is a case in which the quid pro quo for considering the lower range of punishment as a sentence was the waiver of a jury trial. More specifically, the trial court offered to sentence the defendant to ⅓ of the time recommended by the State if the defendant would plead guilty and submit punishment to the court. When the defendant refused, and exercised his right to a jury trial, the trial court assured the defendant that the 30-day offer would not again be available "if appellant chose to go to trial." A trial court may refuse to consider the entire range of punishment based upon many non-arbitrary factors. However, for the trial court to refuse to consider sentencing at 30 days because the defendant has chosen to go to trial instead of plead guilty is the definition of arbitrary.

*Id.* at 40.

Finally, Appellant cites to *Norton v. State*, 755 S.W.2d 522, 523 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) to support his contention that the trial court's remarks amount to a predetermined sentence. In *Norton*, the trial courts in Brazos County, Texas engaged in a local practice of requiring a criminal defendant to undergo a presentence investigation (PSI) prior to trial. *Id.* The Court of Criminal Appeals had previously condemned this practice and ordered the courts in Brazos County to stop examining or reviewing the contents of PSI reports prior to determinations of guilt. *State ex rel. Turner v. McDonald*, 676 S.W.2d 375, 379 (Tex. Crim. App. 1984). The reasons for the rule were made clear by the facts in *Norton*, in which the State requested a PSI and the appellant confessed to the offense to the supervision officer conducting the interview, which, in turn, the State sought to use at trial. 755 S.W.2d at 524-25. This put the appellant in the position of having to file a motion to suppress the statements she made in the interview, which then resulted in the trial court reviewing the PSI prior to a determination of guilt—the exact result which the Court of Criminal Appeals previously held violated a criminal defendant's right to due process. *Id.* After a hearing on the motion to suppress her statements, the appellant asked the trial court if it would consider a plea bargain for deferred adjudication. *Id.* at 523. The trial judge responded, "No, and if the jury gives her probation, I'll give her jail

7

time." *Id.* After a trial, the jury found the appellant guilty and assessed punishment of two years community supervision. *Id.* The trial judge imposed twenty days confinement in jail as a condition of the appellant's community supervision, despite the State declining to seek jail time as a condition when asked for its position. *Id.* The appellate court held that the trial court's statements, made prior to trial on the merits and after hearing a motion to suppress a confession obtained in a presentence investigation, that it would give appellant jail time regardless of the jury's assessment, was an arbitrary refusal to consider the entire range of punishment and constituted a denial of due process. *Id.*

We conclude that the facts of this case are distinguishable from the cases cited by Appellant. In *Brown*, the trial court's admonition that he would impose the maximum sentence if the appellant violated his community supervision was accompanied by evidence that the same trial judge assessed the maximum sentence in other cases after making similar threats and testimony from the trial judge that he sentenced defendants to prison for failing to report 99.2 percent of the time. 158 S.W.3d at 456. Similarly, in *Jefferson*, the trial court's initial admonition was accompanied by his own testimony at the appellant's motion for new trial hearing, which conclusively established that the trial judge was imposing a predetermined sentence. 803 S.W.2d at 471. Unlike in *Brown* and *Jefferson*, there is no additional evidence in this case, beyond the trial court's comments, to support Appellant's contention that the trial court predetermined Appellant's sentence.

*Earley* is distinguishable because the trial court's admonition that it was "just upset that you did a third-degree felony...I would rather have seen you with a first-degree, because I would like to give you life" was made prior to the trial court hearing any evidence in the revocation proceeding. 855 S.W.2d at 262. *Norton* is distinguishable because the trial court's statement that it would not consider deferred adjudication and would give the appellant jail time were made prior to a full trial on the merits but after hearing a confession given to a community supervision officer, a procedure which was held unconstitutional by the Court of Criminal Appeals. 755 S.W.2d at 524-25. *Cabrera* is distinguishable because the trial judge explicitly refused to consider the full range of punishment before it heard any evidence simply because the appellant exercised his constitutional right to a jury trial. 513 S.W.3d at 40. In this case, the trial court's comment, which Appellant argues references a "promise" to impose a ten-year sentence, was not

made until *after* the trial court held the revocation hearing and had given each side the opportunity to present evidence and argument.

In this case, the Appellant cites to the following initial comment by the trial court at the end of a previous revocation hearing:

> So if you come back, the best you will do, if they can prove you violated your probation, will be a ten-year sentence in the penitentiary, depending on whatever it is that they are able to establish – I hope you don't come back.
>
> But if you do come back, I always want people to know the consequences, in the hopes that will make them not come back. And that is the best you will do, is a ten-year sentence and could go all the way up to the max of 20.

However, our review of the record shows that the trial court made the following additional statement just after the above-mentioned comments:

> Because I never know what people are going to do in the interim. Sometimes they go out and commit even new crimes. And, of course, that all goes in the mix of deciding what an appropriate punishment is.

These comments, like the trial court's initial comment in ***Earley****,* indicate a willingness on behalf of the trial court to listen to the evidence and not necessarily prejudge the case. *See* 855 S.W.2d at 262. The trial court qualified its comment that Appellant would get a ten-year sentence if he violated his community supervision "depending on whatever it is [the State] [is] able to establish" and acknowledged that Appellant's performance on probation "of course...goes in the mix of deciding what an appropriate punishment is."

Furthermore, the trial court's comments at the revocation hearing, wherein the trial court referenced its earlier comment, were made *after* the trial court took judicial notice of its file including all prior proceedings and the PSI and gave the parties an opportunity to present evidence and argument. Moreover, the trial court expressly recognized at the revocation hearing that:

> Your plea of true and [the stipulation of evidence] would be all the Court would need to grant [the State's] motion, revoke your deferred probation, find you guilty based upon your original plea of guilty in the case, and assess punishment *anywhere in that second-degree felony punishment range* we talked about a few minutes ago.

9

(Emphasis added).  For the above reasons, our review of the record does not indicate that the trial judge's comments reflect a predetermined or promised sentence.[2]  *See **Thompson v. State***, No. 12-21-00072-CR, 2021 WL 5118388, at \*3 (Tex. App.—Tyler Nov. 3, 2021, pet. ref'd) (mem. op., not designated for publication).  We overrule Appellant's sole issue.


## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered June 8, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*


(DO NOT PUBLISH)

---

[2] The Texas Code of Criminal Procedure requires little more than that the judge "announce his decision in open court as to the punishment to be assessed."  TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(d) (West Supp. 2021). The trial court's departure from the requirements of the Code of Criminal Procedure, well-intentioned though it may be, is unnecessary and may serve to invite the argument that the sentence imposed was predetermined.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 8, 2022

NO. 12-21-00125-CR

**MARQUIST EARHTEL WILLIAMS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 007-1470-18)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*