ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 23 2015

Abel Acosta, Clerk

<u>In The Court OF Criminal Appeals OF Texas</u>

Kadeem Ray, Appellant

FILED IN
COURT OF CRIMINAL APPEALS

APR 23 2015

Abel Acosta, Clerk

V.

The State of Texas, Appellee

On Review from Cause NO. 42,177-B In the Court OF Appeals For the Sixth District at Texarkana

Appeal from Gregg County, Trial Cause NO. 42,177-B

Petition For Discretionary Review
BY
Court OF criminal Appeals

Kadeem Ray, Appellant

v.

The State OF Texas, Appellee

To The Honorable Texas Court OF Criminal Appeals

Appellant Kadeem Ray, respectfully submits this "Petition for Discretionary Review", Seeking reversal of the unanimous Opinion of the Sixth Court of Appeals of Texarkana, rendered on March 26, 2015. A Motion for Rehearing was not filed.

Oral argument is requested by Appellant.

Appellant was indicted for the offense of possession of heroin, for an offense alleged to have occurred on or about February 11, 2012. Appellant waived jury trial and entered a plea of "guilty" to the court on or about December 5, 2013, and thereafter was sentenced to 20 years in TDCJ. Appellant perfected appeal to the Sixth Court of Appeals in Texarkana. On March, 26 2015 the Sixth Court of Appeals affirmed the judgement of the trial court. No Motion for Rehearing was filed. From that affirmance Appellant now brings this Petition for Discretionary Review.

## Statement Of The Procedural History Of The Case

Appellate was indicted for the offense of possession of heroin, for an offense alleged to have occured on or about February 11, 2012. Appellate waived jury trail and entered a plea of "guilty" to the court on or about December 5, 2013, and thereafter was sentenced to 20 years confinement in TDCJ. Appellate timely filed his "Notice of Appeal" on or about May 12, 2014 the thirtienth day after Sentence was orally pronounced and imposed in open court. Appellate perfected appeal to the Sixth Court of Appeals in Texarkana. On March 26, 2015 the Sixth Court of Appeals affirmed the judgement of the trial court, handing down a "Memorandum Opinion" which is appended. No Motion for Rehearing was filed.

### First issue restated...

Did the Court of Appeals err when it ~~ruled~~ condsidered the evidence of an extraneous offense that was not proven beyond a reasonable doubt? At Sentencing the State offered the evidence of an arrest on April 5, 2014 for possession of "black tar heroin" that wasn't proven beyond a reasonable doubt. The trial court acknowledged that under Art. 37.07, TEX. Code Crim. proc., it had to find that the heroin incident in Dallas was proven beyond a reasonable doubt. It so found and then the trial court went on and sentenced appellate to 20 years TDCJ.

### Second issue restated...

Did the trial court reversibly err when it failed to consider the full range of punishment in assessing sentence, and, instead, categorically failed to consider probation as a possible sentence?

## Facts

At the conclusion of evidence and final argument, the trial court summarized the evidence. When the hearing began, there was no admonishment of Appellant; the trial court called the case and immediately began hearing testimony. What about earlier, at the initial plea? There the trial court was aware that Appellant had filed an application for probation and remarked that, "I am bound to consider that application but I do not have to grant probation".

However, there was no acknowledgment of that five months later. Instead, there was the categorical pronouncement that: "You're a drug dealer. Drug dealers do not get probation in this court. Drug dealers do not get probation in Gregg County".

The failure of a trial court to consider the full range of punishment - which included probation here - had been condemned as a violation of due process. Ex parte Brown, 158 S.W.3d 449, 456 (Tex. Crim. App. 2005). The charge to which Appellant pleaded guilty was manual delivery of a controlled substance, the legal term for being a drug dealer. That's what "manual delivery" is - distributing drugs to

Someone else. The trial court considered Appellant a "drug dealer" and, hence, no probation. That was contrary to the law. The case should be reversed and remanded.

Third issue restated...

The trial court reversibly erred in not appointing appellate counsel until the 30th day after Sentencing Appellate, thereby denying him his Sixth Amendment right to counsel during a critical phase of the case.

Facts

On June 4, 2014, the thirtieth day after Sentence was orally pronounced and imposed in open court (May, 5, 2014), Mr. DUNN was appointed as counsel on appeal. Mr DUNN did not learn of his appointment until the following day, June 5, 2014.

Law and Analysis

Under Rule 21.4, Tex.R.Proc., an appellant in a criminal matter has only 30 days following the imposition of Sentence in open court to file a motion for new trial. In this particular, an appellant in a criminal case is at a disavantage compared to an appellant in a civil appeal, whose 30 day window begins to run from the date that the final judgement is signed, which, given the intricacies of civil litigation, might put the date of the signining of the final judgement off for many days, if not weeks,

from the time of the oral pronouncement in open court.

However, the fuse is much shorter in criminal appeals, and so no further delay was possible in this case. The prejudice or harm is apparent because Appellant never had the opportunity to present post-trial motions to the trial court, such as a motion for new trial, for its consideration, to have a hearing, to develop evidence, and thereafter to bring forward other issues to the court.

By its delay the trial court reversibly erred. The case should be reversed and remanded for a new trial.

oral arguement should be heard because the trial court considered evidence of an extraneous offense that was not proven beyond a reasonable doubt. Possession means to have actual care, custody, or control of something. The officer acknowledge that he never saw appellant throw anything or make a throwing motion. The heroin was found more than ten feet away from appellant. So, therefore how could the trial court offer evidence of this extraneous offense into the punishment phase?

Because the Court of Appeals did not prove the Dallas arrest, had been proven beyond a reasonable doubt, and because the error committed was harmful and reversible, review should be granted to reverse the decision of the Court of Appeals, and remand the case to it for further consideration in the punishment phase.

## Prayer For Relief

Wherefore, Premises Considered, Appellant prays that this Honorable Court of criminals Appeals of Texas, grants this Petition for Discretionary Review, that the case be submitted to this Court; that the decision of the Appellate Court be reversed and remanded for further instructions consistent with the Court's ruling.

Respectfully Submitted,

Kaiden Roy



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00106-CR

KADEEM BRACKINS RAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 42177-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Kadeem Brackins Ray had already pled guilty in Gregg County to the charge of possession, with intent to deliver, of one or more but less than four grams of heroin.[1] Before his punishment hearing, Ray was arrested in Dallas for possession of even more heroin. The Dallas-alleged offense was used as evidence at the punishment hearing. In the end, the trial court sentenced Ray to twenty years' imprisonment, and Ray now appeals that sentence.

We affirm the conviction and sentence because (1) sufficient evidence was presented to prove the Dallas heroin possession, (2) the trial court considered the entire range of punishment before sentencing Ray, and (3) the trial court did not err in appointing Ray appellate counsel when it did.

*(1)     Sufficient Evidence Was Presented to Prove the Dallas Heroin Possession*

Ray argues that the State failed to prove the Dallas offense beyond a reasonable doubt, making it error to consider evidence of that event in assessing punishment. To be clear, the underlying conviction is based on what we will call the Kilgore drug possession, and the alleged extraneous offense considered as part of the punishment hearing is called the Dallas possession allegation.

---

[1] On December 5, 2013, Ray pled guilty to the second degree felony offense. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2010). According to Ray's stipulation of evidence and the offense report, admitted without objection, the offense giving rise to this charge occurred February 11, 2012, in Kilgore. Ray and two other men were stopped for a traffic violation. Pistols and marihuana were found in the car. At the police station, Ray was found to have "a plastic bag or object protruding from [his] buttocks." Later, at a hospital, Ray removed from his buttocks area a plastic bag, which in turn contained forty-one small plastic bags, each with heroin. Laboratory analysis showed the aggregate weight to be 3.32 grams. This is the offense to which Ray pled guilty and which led to the conviction and sentence currently being appealed.

After receiving Ray's plea of guilt December 5, 2013, the trial court set the punishment hearing for May 5, 2014. On April 4, 2014, however, Ray was arrested in Dallas for possession of heroin. Officer Chris Cooley of the Dallas Police Department described the details of that arrest. Cooley said he had been monitoring a store, Ray's Tobacco, which was owned by Ray, in Dallas. Cooley saw a sport-utility vehicle (SUV) leave the store and commit two traffic offenses, so Cooley stopped the vehicle. Approaching the vehicle, Cooley smelled marihuana, and when Ray, driving the SUV, opened the window, Cooley could "see marijuana smoke billowing throughout the vehicle." Cooley testified that, when he got Ray out of the SUV, Ray put his left hand into his pocket. Ray did not cooperate with Cooley's commands to remove his hands from his pockets and to put them on the vehicle. Cooley continued his description of the stop:

> [Ray] failed to comply with my verbal command. He goes into his pocket, and then I try grabbing both his -- I guess just above his wrists. And he takes something out of his left hand -- out of his pocket, and grasps it in his left -- left hand. I can see a fist. And then he's switching it in front of his body.

Ray struggled with Cooley, who was trying to wrestle Ray to the ground. Ray was "kind of turning, twisting around," and Ray broke free of Cooley's grasp. Cooley said that, around this time, Ray's arms moved out of the officer's sight, and then Cooley got Ray down to the ground. Throughout this interaction, Cooley believed Ray had something in his hand; but when he was able to handcuff Ray, Cooley found nothing. After arresting Ray, Cooley searched the grassy area where the two men had wrestled to the ground, but Cooley found no contraband. About ten feet from where they went to the ground, in the second lane of traffic, one of the officers found a

3

baggy with a rolled up ball of what was suspected to be, and was later identified as, heroin. Cooley described the ball of heroin:

> [It was] in a tar form and it was rolled up in a ball, like if you were to take Play-Doh and sit there and roll it up on [sic] a ball.
> This is a heavily -- you can see[2] how many cars are going down this street now, just in this video. And it stayed in its form. It wasn't smashed by a car, it -- after a while, it's going to get run over. The heroin was actually still warm, you could -- you know, like body heat. It's kind of a cold night, I've got a long-sleeve shirt on.

In the SUV, officers found baggies similar to the bag containing the ball of heroin found in the street.

The State introduced a video recorded from a camera in Cooley's police car. Cooley can be seen approaching Ray's truck. Ray gets out and is seen stuffing something into, or reaching to get something out of, his left pocket with his left hand. Cooley instructs him to keep his hands out of his pocket and to put them on the truck. It looks like Ray transfers something from his left hand to his right, and at this point a minor scuffle begins, and Cooley wrestles Ray to the ground. The traffic stop occurs in a parking lot, right next to a curb, which borders a grassy median next to a sidewalk immediately adjacent to a multi-lane street with moderate to heavy traffic. From the video, Ray is seen going to the ground on his front with his hands in front of him. He falls to the ground right in front of the street. Cooley is heard several times saying Ray has something in his hands. No throwing motion on Ray's part can be seen. The bag of heroin is found about three minutes after officers secured Ray and placed him in a police car. The State also introduced a photograph, a still image captured from Cooley's in-car camera before he pulled

---

[2]Cooley's tangle with Ray was recorded on the dash camera in Cooley's car; we discuss the video *infra*.

into the parking lot. This photograph shows the entire street, and the State offered it to suggest that no bag of heroin was on the road before the incident; but the photograph is not clear enough to see if any object is in the road.

At punishment, the fact-finder may consider any evidence deemed by the trial court to be relevant to sentencing; this includes extraneous offenses, provided any such conduct is proven beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014). Here, the State sought to prove Ray committed the extraneous offense of possession of heroin. We will use the same analysis to review the sufficiency of the State's proof as when possession is a challenged issue during the guilt/innocence phase of trial.

"It is well settled though that an accused may with another or others jointly possess dangerous drugs or narcotics and that such possession need not be exclusive." *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Possession means a person has "actual care, custody, control, or management" of the item in question. TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2014). An accused and the illicit drugs must be connected by some link[3] which is not established simply by the accused's "mere presence" at the place where the drugs are present. *Evans*, 202 S.W.3d at 166 (Womack, J., concurring). A non-exclusive list of factors which may link an accused to possession of contraband includes

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements

---

[3]In 2006, the Texas Court of Criminal Appeals disavowed use of the adjective "affirmative" to describe the links which may connect a defendant with illegal drugs. *Evans v. State*, 202 S.W.3d 158, 162 n.9 (Tex. Crim. App. 2006).

5

when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12 (citation omitted). Our review is not governed by the number of links present, but by the "logical force of all the evidence, direct and circumstantial" which indicates possession. *Id.* at 162.

In the Dallas traffic stop, a number of links indicated Ray to have been in possession of the heroin found at the scene. The bag of drugs was in plain view, albeit after officers searched the area; it must be noted that the area was outdoors, and the incident occurred at night. Ray was near where the heroin was found; Cooley did not offer any testimony suggesting Ray was under the influence of drugs at the time of the incident. Cooley did say that he smelled marihuana as he approached the vehicle, and when Ray rolled down the window Cooley saw "marijuana smoke billowing throughout the vehicle." Ray made furtive gestures when he made contact with Cooley. Ray ignored Cooley's commands to keep his hand out of his pocket and to put his hands on the vehicle. Cooley described Ray as taking something from his pocket, grasping it in his left hand, making a fist, and switching it in front of his body. As Cooley tried to gain control of Ray, Ray twisted and spun until Cooley finally forced Ray to the ground. Cooley acknowledged he never saw Ray throw anything or make a throwing motion, but the officer was sure Ray had pulled something from his pocket. Combined with Ray's non-compliance and resistance, these

6

furtive gestures suggest a consciousness of guilt. On arrest, Ray was found to have $2,571.00 in cash.

Finally, we take note of the circumstances under which the heroin was found. Cooley and other officers searched the area where Cooley and Ray had fallen to the ground, but did not find any contraband. However, in one of the lanes of the street where Ray was stopped, Cooley found a plastic bag with a rolled up ball of heroin. The ball was still round, and Cooley opined that, based on the location and the present traffic, had the heroin ball been there very long, it would have been run over by a car. Cooley also observed that it was cool the night in question; however, the bag was warm to the touch. In Ray's SUV, officers found baggies of the same kind as that in which the 13.00 grams of heroin were packaged.

The trial court made a finding on the record that the extraneous offense, the Dallas arrest, had been proven beyond a reasonable doubt.[4] Based on the logical force of the links described above, we find there was sufficient evidence on which the trial court, as the finder of fact, could find, beyond a reasonable doubt, that Ray knowingly or intentionally possessed the ball of thirteen grams of heroin.[5]

---

[4]After summarizing the testimony, the trial court also referenced Ray's February 2013 arrest for the primary offense, where Ray had forty-one small bags of heroin concealed in his buttocks. We express no opinion whether such consideration is properly treated as a link in the possession analysis, or whether such circumstance would be admissible under the doctrine of chances (cf. De La Paz v. State, 279 S.W.3d 336 (Tex. Crim. App. 2009)), and exclude that offense from our review of the Dallas offense.

[5]Here, we apply the analysis we would use for legal sufficiency of the evidence, where we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury, or fact-finder, could have found the essential elements of the offense beyond a reasonable doubt. Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Hartsfield v. State, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of Brooks, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and

Because we find the Dallas extraneous offense was sufficiently proven, the trial court properly considered that offense in assessing punishment.

We also address a related argument Ray makes as part of his briefing. The State offered a laboratory report that the Dallas heroin weighed 13.0487 grams. Ray argues admission of this documentary evidence ran afoul of Article 38.41 of the Texas Code of Criminal Procedure. That Article speaks to certificates of analysis such as the one introduced here, allowing compliant certificates to be made part of the trial court record and to satisfy evidentiary and constitutional thresholds, if the statute's requirements are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.41 (West Supp. 2014).

Article 38.41 allows a proponent of scientific evidence to file with the clerk of the trial court a laboratory analysis or report. If no objection is lodged, such a report is admissible at trial without the proponent's having to summon for live testimony the analyst who made the report. To satisfy Article 38.41, the proponent must file the report with the clerk at least twenty days before trial. The report is not admissible if the opposing party, at least ten days before trial, files a valid written objection to the report. *See* TEX. CODE CRIM. PROC. ANN. art. 38.41, § 4.

Here, the State filed the certificate of analysis April 30, 2014, a week before the punishment trial began. Ray is correct that this was far short of Article 38.41's twenty-day marker, and it was impossible for Ray to file a written objection at least ten days before trial. But Ray did not make this complaint to the trial court. Further, when the State offered the laboratory report into evidence, Ray affirmatively said, "[N]o objection," and the State made no

---

to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

pretense of offering the laboratory report under the authority of Article 38.41 stating only, "Your Honor, at this time the State's going to offer into evidence State Exhibit No. 6. It's a laboratory test of the drugs that have been shown to the Court."[6] We do not see how the requirements of Article 38.41 are at play here. Notwithstanding that statute, a proponent of evidence can still offer evidence in court, and an opposing party can still waive any complaint by saying "no objection."[7] Ray offers no support for his claim that the laboratory report here was "per se inadmissible." Even if the report were objectionable, i.e., Ray could have challenged its admissibility and demanded an opportunity to cross-examine its author, this does not make the evidence inadmissible. Our review of the sufficiency of the evidence includes consideration of evidence "properly and improperly admitted." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We find Article 38.41 inapplicable to Ray's trial.

*(2)    The Trial Court Considered the Entire Range of Punishment Before Sentencing Ray*

Ray also argues that the trial court did not consider the full range of punishment in assessing Ray's sentence. Ray points to the following statements made by the trial court at

---

[6]Immediately before this proffer, the State had been questioning Officer Cooley about the drugs found in the Dallas arrest; the officer was holding a sealed package which he described as having the identifying information from Cooley's investigation. This evidence, while referenced and discussed by the witness before the trial court, was not admitted into evidence, presumably to facilitate prosecution of the Dallas case. Ray lodged no objection to this procedure.

[7]Although not necessary for our resolution of this issue, it is likely a defendant's right to object to a certificate of analysis would constitute a forfeitable right, being a right granted by an evidentiary or procedural rule. *See Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004); *see also Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993).

9

sentencing: "You're a drug dealer. Drug dealers do not get probation[8] in this Court. Drug dealers do not get probation in Gregg County."

Ray acknowledges that, in December 2013, when the trial court accepted Ray's non-negotiated plea of guilty, the trial court stated it had seen Ray's application for community supervision and was "bound to consider that application, but [did] not have to grant probation." Ray said he understood the trial court. We also observe that the trial court told Ray that the range of punishment for a second degree felony was neither less than two, nor more than twenty years' incarceration, and that the trial court could probate any sentence assessed "and put [Ray] on probation from anywhere from two years up to ten years." On receiving evidence and after further admonishing Ray, the trial court accepted the plea of guilty but deferred the sentencing hearing. Based on Ray's age of twenty-two at the time of his guilty plea, we take this deferral of guilt by the trial court as a suggestion the court left open the possibility of placing Ray on deferred adjudication community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5 (West Supp. 2014). The trial court also told Ray, at the plea hearing, "[I]f you commit any new offenses between now and the date of sentencing, that could affect what your sentence is." Ray said he understood this warning. The trial court concluded its admonishments,

> This is, like I said, an open plea, so I don't know what my sentence is going to be; I don't know if it's going to be prison time or probation. I need to hear and listen to all the evidence. But if you -- if -- you not showing up or you committing new offense between now and then would negatively affect your ability to get probation. Do you understand that?

---

[8]In 1993, during the 73rd Legislative Session, the statutory term for "probation" was changed to "community supervision." Both terms refer to the same process and will be used interchangeably in this opinion. *See Ivey v. State*, 277 S.W.3d 43, 51 n.48 (Tex. Crim. App. 2009).

Ray answered, "Yes, sir." At the conclusion of the plea hearing, it was clear the trial court was considering the entire range of punishment, from a suspended sentence to twenty years' incarceration.

When the trial court reconvened this case for sentencing, it said nothing which could be interpreted as suggesting any preconceived notions about sentencing. The court called the case and heard testimony. The State presented testimony from Cooley, referenced above. In addition to the roadside arrest at which the thirteen grams of heroin was found, Cooley also described the incident from January 2014, described above, where Cooley responded to an anonymous report of drugs being sold from Ray's Tobacco store. Walking in the store, Cooley was "overwhelmed by the odor of marijuana." In the store, police found a bag of marihuana weighing 147 grams and a .357 Magnum revolver. Cooley said charges were pending in Dallas for the marihuana possession.

Ray denied ownership of the marihuana in his store in the January incident, but said he knew of another person storing drugs in his store. He denied being in possession of the thirteen grams of heroin in Dallas on April 4, and he explained any furtive movements he may have made as owing to his stuffing money into his pocket.[9] He also said the large sum of cash he had in his possession was derived from legitimate store sales, not from the sale of illegal drugs. He further claimed he had quit selling heroin after his arrest in Kilgore. When he did sell heroin, Ray said he used a cell phone and his car.

---

[9]Ray was heard on the video saying he had been putting his money in his pocket.

In his testimony, Ray acknowledged having used heroin "from time to time" and having "a small drug addiction." However, after the close of evidence, the trial court pointed out that, in the presentence investigation report, Ray denied having used heroin and denied using heroin in the past twelve months. This contradiction led the trial court to characterize Ray as a "liar" and, in combination with the circumstances of his Kilgore arrest and the Dallas arrest, led the trial court to conclude Ray was a drug dealer.

> [I]n my mind, kind of confirmed what you are; a drug dealer. You're smart enough not to use your product, you just sell it. You come into the streets of Gregg County with 41 bags. That's not -- if you were buying it for individual use, you would have probably bought in a little larger quantity instead of buying it in 41 separate bags. This with all these little baggies, is probably meant for the folks in Dallas County.
>
> You're a drug dealer. Drug dealers do not get probation in this Court. Drug dealers do not get probation in Gregg County.
>
> You told me in your PSI that, golly, if I just grant you probation, you'll never be in trouble again. I guess that was going to start today, because -- and you figured you'd had up until today to get all of your trouble out of the way. Well, I hope you have. Because for the next 20 years, you will be in prison. You will be no trouble to Gregg County or Dallas County.

Based on the state of the evidence and the record, we see no indication the trial court did not consider community supervision. Rather, the record establishes that, after hearing punishment evidence, the trial court did not believe a suspended sentence was appropriate.[10] We overrule this point of error.

---

[10]Ray cites *Ex parte Brown*, 158 S.W.3d 449 (Tex. Crim. App. 2005), for the proposition that a trial court's failure to consider the full range of punishment is a violation of due process. This is correct. "[A] trial court's arbitrary refusal to consider the entire range of punishment in a particular case violates due process." *Id.* at 456. We find nothing in the record establishing that the trial court's decision on sentencing was arbitrary in this case.

12

*(3)     The Trial Court Did Not Err in Appointing Ray Appellate Counsel When It Did*

The trial court imposed sentence May 5, 2014. At the time, the trial court also found "the defendant is not in any way indigent. Because every time he's been arrested, he's had cash; he testified about selling a Mercedes and being able to make bonds in over $200,000.00."[11] Ray's appellate argument is that the timing of this appointment effectively precluded him from filing a motion for new trial, securing a hearing on such a motion, or presenting evidence in support of a new trial.

The record shows appellate counsel was appointed June 4, 2014, the thirtieth day after sentence was imposed. In his brief, counsel says he did not find out about the appointment until June 5. On May 12, 2014, Ray filed a pro se notice of appeal and a letter to the trial court stating that he had no "funds to secure an attorney or pay for any transcript" and asking the court to appoint an appellate attorney or have a hearing on whether Ray was indigent.

A convicted defendant has thirty days after the trial court imposes sentence to move for a new trial. *See* TEX. R. APP. P. 21.4(a). This period has been deemed "a critical stage of the proceedings," at which defendants have a constitutional right to counsel. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007). Where the defendant is represented by counsel at trial, there exists "a rebuttable presumption that this counsel continued to adequately represent the defendant during this critical stage." *Id.* Likewise, there is a rebuttable presumption that, if a motion for new trial was not filed, it was because the defendant, with the benefit of counsel, considered and rejected filing such a motion. *Id.* If the defendant rebuts this presumption, with a

---

[11]Ray testified at the punishment hearing that he sold a Mercedes Benz CLS500 to make a $16,000.00 bond payment to get out of jail on the Dallas case.

13

showing he or she "was deprived of adequate counsel during this critical stage, this deprivation of counsel is subject to a harmless error or prejudice analysis." *Id.*

In *Cooks*, Cooks was represented by retained counsel at trial and pled guilty without a plea agreement. After a sentence of fifteen years was pronounced, the retained attorney informed Cooks, on the record, of his right to appeal. Counsel told the trial court that Cooks did not have funds to retain him for appeal and that, although counsel did not see grounds for an appeal, Cooks sought the appointment of an appellate attorney. *Id.* at 908. The trial attorney, twenty days after sentencing, filed a notice of appeal, which also included a request for the appointment of appellate counsel. On that date, the trial court appointed an appellate attorney. No motion for new trial was filed before the thirty-day deadline imposed by Rule 21.1(a) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 21.1(a).

About four months later, though, appellate counsel filed a motion to abate the appeal to allow for an out-of-time motion for new trial. *Cooks*, 240 S.W.3d at 908. The motion alleged that Cooks had had no representation during the period from sentencing to the appointment of appellate counsel and that appellate counsel did not have time "to adequately assist appellant in deciding whether to file a motion for new trial." *Id.* at 909. Cooks also asserted that trial counsel was ineffective at sentencing because he failed to call a material witness and did not conduct a sufficient investigation. *Id.*

14

The Texas Court of Criminal Appeals observed that Cooks "was unrepresented by counsel during the initial twenty days of the 30-day period."[12] *Id.* at 911 (footnote citation omitted). This, along with "appellate counsel's assertion in the Motion to Abate that there was not enough time after her appointment for her to adequately assist appellant in deciding whether to file a motion for new trial, [we]re sufficient to rebut the presumption that appellant was adequately represented by counsel during this entire 30-day period." *Id.* The Court of Criminal Appeals also found this deprivation of counsel harmless beyond a reasonable doubt, finding that the motion to abate had presented no "facially plausible claims" that Cooks could have presented in a motion for new trial, even though appellate counsel had more than four months "to discover any such claims from the time of her appointment . . . until she filed the Motion to Abate." *Id.* at 912 (quoting *Prudhomme v. State*, 28 S.W.3d 114, 120–21 (Tex. App.—Texarkana 2000, order)). We found Prudhomme presented a facially plausible claim for relief where, in his pro se, sworn motion to set aside his plea (which we treated as motion for new trial), he averred his trial counsel had told him he would receive a probated sentence upon a plea of guilty. *See Prudhomme v. State*, 28 S.W.3d 114, 117 n.3, 120–21 (Tex. App.—Texarkana 2000, order). The allegation in the motion to abate that trial counsel failed to call a material witness or to conduct sufficient investigation "did not establish any facially plausible claim of ineffectiveness of trial

---

[12]Here, the Texas Court of Criminal Appeals referred to the intermediate court's conclusion that "the record reflects that appellant did not enjoy the benefit of representation following sentencing and until" the date the trial court appointed appellate counsel, i.e., with ten days remaining to file a motion for new trial. The court of appeals' conclusion was based on trial counsel's statement, following pronouncement of sentence, that Cooks was unable to hire counsel for appeal and counsel's requesting the trial court to appoint appellate counsel. *Cooks v. State*, 190 S.W.3d 84, 88 (Tex. App.—Houston [1st Dist.] 2005, pet. granted), *aff'd*, 240 S.W.3d 906 (Tex. Crim. App. 2007). "Having informed appellant and the trial court, on the record, that appellant could not afford to hire him to pursue any appeal, counsel likely regarded that his responsibility did not extend to representing appellant for appellate purposes." *Id.*

15

counsel," because it failed to set out what evidence or information" the witness or investigation would have shown "that reasonably could have changed the result of this case." *Id.*

More similar to Ray's situation is that in *Oldham v. State*, 977 S.W.2d 354 (1998), where the appellant filed a pro se notice of appeal and allegation of indigency twenty-eight days after sentencing. Nothing in the record rebutted the presumption Oldham's retained counsel continued to represent her effectively throughout the litigation. *Oldham*, 977 S.W.2d at 363. The Court of Criminal Appeals stressed the lack of affirmative evidence in the record suggesting that Oldham's attorney "did not discuss the merits of a motion for a new trial" with Oldham, and that she rejected it, noting that, "[w]hen a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected." *Id.* The court also interpreted "the fact that [Oldham] filed a *pro se* notice of appeal [as] some evidence that she must have been informed of at least some of her appellate rights" and presumed Oldham "was adequately counseled unless the record affirmatively display[ed] otherwise." *Id.*

As in *Oldham*, the record here contains no assertion or suggestion that Ray had a facially plausible claim he could have raised in a motion for new trial. His appellate counsel merely argues "prejudice or harm is apparent because Appellant never had the opportunity to present post-trial motions to the trial court, such as a motion for new trial . . . to have a hearing, to develop evidence, and thereafter bring forward other issues to this Court." This bare allegation does not affirmatively identify specific issues Ray was prevented from bringing, suggest what evidence he would have sought to develop, or argue how such evidence would have benefited his appeal. As in *Oldham*, the Court will presume Ray's trial counsel continued to effectively

16

represent Ray post sentencing, including discussing Ray's options for filing a motion for new trial. *See id.* at 362–63.

We overrule this point of error.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted: February 5, 2015
Date Decided: March 26, 2015

Do Not Publish