COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RASHAD CHISHOLM, | § | No. 08-17-00258-CR |
| Appellant, | § | Appeal from the |
| v. | § | 120th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120D02440) |
| | § | |

## O P I N I O N

Appellant Rashad Chisholm was sentenced to twenty years' confinement for engaging in organized criminal activity. In a single issue, Chisholm argues the court showed improper bias toward him by accusing him of attempting to manipulate the docket when he requested to hire new counsel just prior to a hearing. We affirm.

## BACKGROUND

Appellant Rashad Chisholm was indicted for two counts of engaging in organized criminal activity. The counts alleged he had, as a member of the "Bloods" street gang, committed the offenses of assault and aggravated assault with a deadly weapon. Approximately a year after these indictments, Chisholm was arrested for a new aggravated-robbery offense. When given the option to have counsel appointed, Chisholm chose to hire counsel to represent him instead. His

attorney, Miguel Cervantes, negotiated a plea with the State to both counts of engaging in organized criminal activity, and Chisholm was given ten years deferred-adjudication probation.

A few months later, the State filed a motion to adjudicate in which it alleged Chisholm had violated several of the terms and conditions of his deferred-adjudication probation. Chisholm again hired Cervantes to represent him. The trial court dismissed the State's motion to adjudicate, deciding instead to modify the terms and conditions of his probation to require him to participate in a treatment program at the West Texas Behavioral Health Residential Center.

A little over a year passed without incident. But on December 15, 2016, Chisholm's probation officer notified the trial court that Chisholm had again been arrested for engaging in organized criminal activity. The trial court issued a bench warrant for Chisholm for violating his probation and he was arrested the same day. This time, instead of hiring counsel, Chisholm asserted he lacked the assets to pay for an attorney and requested appointed counsel, which was granted. Attorney Charles Roberts was appointed to represent Chisholm.

The State filed a motion to adjudicate guilt, alleging Chisholm had violated his deferred-adjudication probation in two ways: (1) by engaging in organized criminal activity, and (2) by violating his court-imposed curfew. While this motion was pending, Roberts moved to withdraw as counsel, asserting Chisholm had expressed dissatisfaction with his performance and approach to the case. The trial court granted the motion and appointed attorney Cesar Lozano to replace Roberts. Lozano filed a motion to reduce Chisholm's bond, asserting he had attempted to raise funds for the bond through friends and family but had been unsuccessful.

Trial for his offense of engaging in organized criminal activity was set to begin October 2, 2017 at 8:30 a.m. That morning, Lozano told the court that Chisholm was going to accept a plea

2

agreement with the State and that they were in the process of finalizing the details. With that understanding, the trial court sat a jury for a different case and set the contested revocation hearing with Chisholm for that afternoon.

But just prior to the hearing that afternoon, Lozano filed a motion to withdraw as counsel, asserting Chisholm wanted to retain a new attorney to represent him. When the trial court called the case that afternoon and asked for announcements from counsel, Lozano announced he was not ready to proceed and notified the court of his motion to withdraw. He explained that he had been discussing the issues with his client that morning and after the discussion Chisholm informed him he wanted to retain a different lawyer. Lozano stated Chisholm made a phone call in his presence to another lawyer and received a price quote from him.

The court asked Lozano if he had been appointed as counsel, and Lozano confirmed that he had been, elaborating that Chisholm had contacted his grandmother who had agreed to help him pay for a new attorney. The trial court expressed its frustration with this turn of events, and its belief that Chisholm was attempting to manipulate the system through his sudden request for new counsel:

> [THE COURT]: But as we are here today -- and I'll note for the record that Mr. Chisholm's case was set at 8:30 this morning. In fact, the case that was set is 20160D05852. He has a pre-trial case, and it is a matter -- it's a charge of engaging in organized criminal activity. That case was set for trial today, and it was number one, along with the codefendants in this case. The codefendants were dismissed, and my understanding was that Mr. Chisholm was going to take a plea.
>
> You were here and you told me that you were working on it, that it was going to take a little bit of time. I don't know what all transpired between the State and defense counsel, but I know that we proceeded to seat a jury in the number two case with the understanding that Mr. Chisholm was going to take a plea.
>
> Obviously, Mr. Lozano, I can't put this on you, and you have filed a motion to withdraw so I have to believe that at least part of that conversation is that you

3

represented to the State of Texas that you'd reached an agreement in this case and then, after the full day, have to be here on a contested revocation, which was set. And that was my intent, that these matters need to be resolved one way or the other. I didn't call the pre-trial case because I intend to proceed on a revocation.

Mr. Chisholm, I have to tell you that you are manipulating the process. You are a probationer twice out of this court. You've had two cases out of this court, have had matters proceeding. You know the way the process works. You know you were set for trial. Even though you have a right to decide whether or not you want to proceed to a jury trial on your pre-trial matters, you gave enough representation to Mr. Lozano so that he could represent to the State of Texas that there was an agreement.

I had 125 jurors called for a jury trial today, and today was your day. If you didn't want to take the State's offer, we could have proceeded to seat a jury in your case, and based on your representation to counsel and with the State, that panel was used for another trial. This process of wanting to get a new lawyer when you were qualified for counsel, now, apparently, you intend to hire counsel. That just shows the manipulation of the Court's docket but perhaps maybe a lack of truthfulness with regard to your ability to pay for counsel, because you have had appointed counsel throughout these proceedings, which has been at least since -- I don't know. Mr. Lozano -- oh, it must have been June of this year because you had Mr. Roberts represent you up until June 7th of 2017 when I granted Mr. Roberts' request to withdraw. Prior to that, there had been a motion to continue.

So this case has gone on fairly long and we are ready to proceed to a jury trial, whatever the disposition might have been, but I'm not -- I'm not inclined to grant that motion, Mr. Lozano. We have a revocation proceeding. It's a proceeding to me. Mr. Chisholm has represented that he couldn't hire counsel and now, after all day, that's what he's going to do. I mean, I don't think that's -- I think it certainly starts to look like a misuse of County resources if you're appointed to represent him because he doesn't have the resources and he's qualified for appointed counsel but now, after manipulating the docket, 125 jurors later, now, all of a sudden, he wants to pay for someone else to come in. I'm more than a little bothered by that. Is he paying probation fees? Is he paying -- none of those things, but now he wants to hire a lawyer.

.        .        .

[THE COURT]: In addition to having everyone wait for this revocation hearing, which was already set, Mr. Chisholm, you're not going to be able to hire anyone who's going to come in and get ready for these cases right away. I don't know who it is that you talked to, but I'm certain that whoever you talked to is counting on having enough time to prepare, and that is not what is going to happen here. So

4

until such time that you hire someone who's prepared to proceed on a setting which, at best, would be in a week --

You know, I'm not prepared to grant it, Mr. Lozano. And I hate to put you in a difficult situation but there is -- you know the case. You know Mr. Chisholm. We have a revocation set. I think you're it. I mean, what is it that you would have had to prepare on a revocation? You've been counsel for at least four months. And I'm not asking you to proceed on the pre-trial case. You have the right to a jury trial there, and that's for another day. But what is proceeding at this moment with you as counsel -- because I don't intend on having someone else come in, and you know they're going to ask for six months, minimally. I'm not going to do that. These cases need to be resolved and Mr. Chisholm has been on probation out of this court for at least three years. There's nothing to prevent me from proceeding on the revocation and that's what I intend to do.

Lozano explained that negotiations with the State the week before had gone well, and he believed a plea agreement had been reached on the most recent engaging-in-organized-criminal-activity case. But over the weekend he had received a text message from Chisholm indicating that he did not think the plea was the right decision and that Lozano was not serving his best interests. Lozano stated he believed there had been some misunderstanding and he would be able to explain the situation to Chisholm that morning, but his attempts were unsuccessful. He also noted that he was not comfortable proceeding because he had not gathered the necessary punishment witnesses and now did not have the time to do so. The trial court proposed moving forward with the violation portion of the revocation hearing and postponing the punishment portion to give Lozano time to gather the necessary punishment witnesses. Lozano stated he was still uncomfortable proceeding because of Chisholm's desire to not have Lozano represent him, and the court noted its belief that the alleged conflict with Lozano's representation was an attempt by Chisholm to manipulate the system. It then stated:

[The Court]: But, Mr. Chisholm, I can't allow you to continue to manipulate the process. You've made representations. You've had the full advice of counsel and we have two matters that can be disposed and I have witnesses that have been

5

waiting all day pursuant to your decisions. There's no one else here that is calling the shots except you. This was your decision. And having decided to not take the plea, then we need to proceed with the revocation.

The court then denied Lozano's motion to withdraw as counsel and proceeded with the revocation hearing.

The State abandoned one of its allegations and proceeded only on the alleged curfew violation. Chisholm pleaded "not true" to that violation. After the State presented evidence, Chisholm changed his plea to "true," and the trial court recessed to resume the punishment portion of the hearing at a later date.

At the subsequent punishment hearing, the State presented evidence of Chisholm's aggravated-robbery case, his probation violations, and his continued association with the Bloods street gang. Chisholm presented the testimony of relatives, family friends, sports coaches, and others who testified to his good character, that he had merely fallen in with the wrong crowd, and that they would mentor him if he were allowed to continue on probation. Chisholm also presented letters and emails of support from others who identified him as a good person and who promised to support him if he were given the chance to continue probation.

Chisholm argued he should be allowed to stay on probation because (1) the State had only proven a curfew violation, (2) he had essentially completed all requirements of his probation except for paying fines and fees, and (3) the testimony of his witnesses showed his capacity for completing probation and becoming a productive member of society. The State, in turn, pointed out that Chisholm had violated probation multiple times, that he continued to unapologetically affiliate with the Bloods, and that there was no evidence presented that he actually intended to change his life. The State asked the court to sentence him to twenty years' confinement.

6

In pronouncing punishment, the court noted it was aware that Chisholm came from a good family and the adults in his life were willing to help him. The court also noted that Chisholm had been nothing but courteous and respectful in all proceedings before the court and in his interactions with staff, and that he never behaved like a person who would disregard court orders due to a gang mentality. But the court stated it could not reconcile this image with Chisholm's documented behavior outside the court's presence. The court stated it must therefore conclude that neither the adults in his life nor the court itself had any significant influence on his behavior and expressed its belief that he would not change his life. The court then revoked his probation and sentenced him to twenty years' confinement. This appeal followed.

## DISCUSSION

In his sole issue on appeal, Chisholm argues the court showed deep-seated antagonism toward him by accusing him of attempting to manipulate the docket when he requested to hire new counsel after assuring the court that morning he would be accepting a plea deal. He asserts that because of this antagonism toward him, the court was unable to be fair and impartial during his hearing.

### *Applicable Law*

Due process guarantees a criminal defendant the right to a hearing before a neutral and detached judge who will consider the full range of punishment and mitigating evidence. *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82 (1973); *Brumit v. State,* 206 S.W.3d 639, 645 (Tex.Crim.App. 2006). A judge violates due process by arbitrarily refusing to consider the entire range of punishment or mitigating evidence in a particular case and, instead, imposing a predetermined punishment. *Ex parte Brown,* 158 S.W.3d 449, 456 (Tex.Crim.App. 2005). We begin with a

7

presumption that the judge was neutral and detached. *Brumit,* 206 S.W.3d at 645. The burden is on the defendant to make a "clear showing" of improper bias. *Id.*

Expressions of impatience, dissatisfaction, annoyance, and even anger with a defendant or defendant's counsel do not establish bias. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994); *Gaal v. State*, 332 S.W.3d 448, 455 (Tex.Crim.App. 2011). Accordingly, ordinary efforts at courtroom administration by a trial court will not demonstrate bias. *Gaal*, 332 S.W.3d at 454. While critical, disapproving, or hostile remarks to counsel or a party will not usually support a bias challenge, they *may* do so if they reveal an opinion based on extra-judicial information. *Id.* Judicial remarks do support a clear showing of bias, however, when they display "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.*, (quoting *Liteky*, 510 U.S. at 555). Bias is also demonstrated where a trial judge arbitrarily, without any evidence before him, refuses to consider a portion of the range of punishment. *Id.* Judicial rulings alone, however, will almost never constitute a valid basis for a finding of improper bias. *Liteky*, 510 U.S. at 555.

### *Analysis*

Here, Chisholm argues the court's remarks that he was attempting to manipulate the docket displayed a deep-seated antagonism toward him that rendered fair judgment impossible. While Chisholm acknowledges the comments of the court are insufficient, standing alone, to show bias, he argues that the court's negative opinion of his actions was acquired extra-judicially. He asserts when this alleged extra-judicial opinion is combined with the comments of the trial court, there is a clear showing of deep-seated antagonism.

8

But Chisholm does not point to any evidence to demonstrate the trial court's opinion was acquired extra-judicially. He instead asserts the court's belief that he was attempting to manipulate the process must have been based on extra-judicial knowledge because there was nothing in the record to support such an accusation. Contrary to this assertion, however, the record shows that the court's opinion regarding his motivations were based entirely upon the events transpiring in the judicial proceedings in his case. Chisholm's request for appointed counsel, the withdrawal of initial counsel, and the appointment of Lozano were matters of record before the court. The morning of his hearing date, Chisholm was set for trial for the underlying offense of engaging in organized criminal activity. Attorney Lozano told the court Chisholm would be taking a plea and, based on that representation, the court informed Chisholm that his hearing on the State's motion to adjudicate would be set for that afternoon. Neither Chisholm nor Lozano indicated at that time they would not be ready because Chisholm wanted to retain a new attorney or that he was disinclined to accept the State's plea offer. That afternoon, Lozano announced "not ready" and stated he had moved to withdraw as counsel because Chisholm now wanted to hire another attorney, allegedly because of disagreements between he and his client and because Chisholm's grandmother had agreed at the last minute to provide funds for a new attorney. It was at this point that the court expressed its displeasure with the effect the earlier misrepresentations would have on the docket and its belief that Chisholm's request was made with the intent to manipulate the process. Regardless of Chisholm's true intent, the court's accusation of manipulation was wholly based on the judicial proceedings before it, and Chisholm has pointed to nothing to show that they were derived extra-judicially.

9

Because there is no evidence of extra-judicial considerations by the court, Chisholm's claim of judicial bias rests solely upon the admonishments of the court during the adjudication hearing. As Chisholm himself recognizes, the court's remarks, standing alone, do not rise to the level of showing "deep-seated antagonism" that would render fair judgment impossible. *Liteky*, 510 U.S. at 555–56 (expressions of impatience, dissatisfaction, annoyance, and even anger with a defendant do not establish bias); *Gaal*, 332 S.W.3d at 455 (ordinary efforts at courtroom administration by a trial court do not demonstrate bias). The trial court here merely expressed its belief that Chisholm's desire to change counsel was motivated by a desire to manipulate the docket and admonished him in accordance with that belief. At no point did the trial court state it would, as a result of his alleged manipulation, no longer consider the full range of punishment or sentence him to a predetermined punishment regardless of the evidence presented. *See Brown,* 158 S.W.3d at 456 (arbitrary refusal to consider full range of punishment or mitigating evidence and imposing predetermined punishment violates due process). Instead, the court specifically acknowledged the mitigating evidence in its pronouncement of punishment, noting its belief that Chisholm came from a good family, that the adults in his life were willing to help him, and that he had been nothing but courteous and respectful in all proceedings before the court. The court explained it could not reconcile this positive image with Chisholm's continued behavior outside the court's presence and concluded neither the court nor the adults in his life seemed to have the ability to convince him to reform his behavior. Only then did it sentence him to twenty years' confinement, a sentence well within the punishment range for a first-degree felony offense of engaging in organized criminal activity. *See* TEX.PENAL CODE ANN. § 71.02. Accordingly, Chisholm has failed to make a "clear showing" of improper bias. *Brumit,* 206 S.W.3d at 645. His issue is therefore overruled.

10

The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2. The certification is defective, and has not been corrected by the Appellant's attorney, or the trial court. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED, to comply with all of the requirements of TEX.R.APP.P. 48.4.

## CONCLUSION

Having overruled Appellant's only issue, the judgment of the trial court is affirmed.

July 10,2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

11