In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00171-CR
NO. 09-19-00172-CR
_____

JE'QUAYLIN TAYLOR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause Nos. 17-26500, 17-26502

## MEMORANDUM OPINION

Je'Quaylin Taylor appeals the trial court's revocation of his deferred adjudication.[1] In four issues on appeal, Taylor argues the trial court erred by not considering the entire range of punishment for his offense and by admitting hearsay testimony in violation of his due process rights under the Fourteenth Amendment of

---

[1] Appellant is also known as Jequaylin Taylor, Jequaylin Prince Taylor, and Jequaylin Lee Andrew Prince.

1

the United States Constitution and the Confrontation Clause of the Sixth Amendment of the United States Constitution. *See* U.S. Const. amend. VI, XIV. For the reasons explained below, we affirm the trial court's judgments.

## Background

On January 4, 2017, a Jefferson County Grand Jury indicted Taylor for two separate incidents of Aggravated Robbery, both first-degree felonies. *See* Tex. Penal Code Ann. § 29.03(a)(2), (b). On July 23, 2018, Taylor pled guilty to both counts. Taylor entered into a plea agreement with the State that capped his punishment at 15 years of incarceration on both cases and provided that Taylor would be granted deferred adjudication on both charges. The trial court approved the agreement, deferred adjudication in both cases, and ordered that Taylor be placed on 10 years of community supervision. One condition of his community supervision required Taylor to "enter and successfully complete the cognitive and substance abuse programs of the Intermediate Sanctions Facility (ISF)[.]"

On January 9, 2019, the State filed a Motion to Revoke Unadjudicated Probation in both cases. In March 2019, the trial court held a hearing regarding the State's Motion to Adjudicate. At the hearing, the trial court asked Taylor whether the allegation in the State's motion that he violated his probation by "failing to comply with the program guidelines and rules of the Intermediate Sanction Facility" was true or not true. Taylor pled "not true" for Count 1 in both cases. At this hearing,

2

the trial court reminded Taylor of the punishment range for his crimes, stating, "I just want to make sure you understand that I can revoke your probation and I can sentence you anywhere in the range of punishment for those offenses, which is between five years and up to 99 years or life." The trial court then reset the case for an evidentiary hearing.

In May 2019, the trial court held the evidentiary hearing regarding the State's motion to revoke unadjudicated probation. During the hearing, a single witness testified for the State regarding its allegations. At the hearing's conclusion, the trial court adjudicated Taylor guilty of both Aggravated Robbery charges, made an affirmative deadly weapon finding, and sentenced him to 40 years of incarceration in the Texas Department of Corrections. Taylor timely appealed.

## Issue One

In his first issue, Taylor argues that the trial court erred when it did not consider the entire range of punishment for his offenses. Specifically, Taylor argues that he was not afforded a "neutral and detached" judge because the trial court "refuse[d] to consider the evidence and impose[d] a predetermined punishment." Taylor's brief directs this Court's attention to the trial court's July 2018 comments when it initially deferred adjudication.

> THE COURT: I'm going to do something here that I really didn't think I was going to do until about right now, and that is I am going to give you an opportunity. You may not like it, because it's probably going to be more difficult -- what I'm going to do today is probably more

3

difficult than me just giving you some time and you go do it. I agree with [the defense attorney]. I think sending you to prison could potentially make things worse. Now, there may be a time when there's no choice that I have, and there are cases where I feel like there's no choice but to send somebody to prison, whether it makes them better or worse or whatever. But because of your age, because you have those people right there, that's why I'm doing this, is because you have somewhere to go.

And, so, what I'm going to do -- in Cause No. 26500, I'm going to find that you entered your plea of guilty freely and voluntarily. I'm going to find sufficient evidence to find you guilty. However, at this time, I'm going to defer all proceedings and place you on probation for a period of ten years. I'm going to go through what all the requirements of that are in a minute.

Cause No. 26502, I'm also going to find that you entered your plea of guilty freely and voluntarily, find sufficient evidence to find you guilty, and in that case, I'm going to defer all proceedings for a period of ten years and place you on probation. The conditions of both of these probations are that you will start off your probation by entering and successfully completing both phases of I.S.F., the drug treatment phase, as well as the cognitive thinking phase. So, I realize you've been locked up, but sitting in jail waiting on this doesn't help me feel better about sending you to them. So, you're going to go through both phases. I can tell you right now that if you act the way you've been acting in jail when you're at I.S.F. and I get one report that you have been disrespectful to anyone, then that will be a violation of your probation, and you'll never get out to even try the real probation. Do you understand what I'm saying?

THE DEFENDANT: Yes, ma'am.

THE COURT: Once you successfully complete that, because I believe that you can -- I believe that you need to listen to what they tell you when they visit you, not what anybody else tells you -- then you will be ordered to live with your parents. You will have a restriction to be living in their house at all times. You're not allowed to spend the night anywhere other than their house. You will be ordered to wear a GPS monitoring device, and you will also be ordered to wear a drug patch at

4

least for some time until we see how aftercare's going after I.S.F. so that I know what you're doing, where you are. Other than a job or school, you will be ordered to house arrest. So, you can go [to] school. I hope you do. You're going to have every opportunity in these cases because you don't have a felony conviction on your record. This is your day. This is it. You either take this day and run with it, or you come back in this court -- and the reason I gave you a deferred probation is partly for you -- but it's more for me; okay -- to keep those convictions off your record, which is great for you. If you successfully complete these probations, then the cases are dismissed at the end and you'll never have a felony conviction on your record. So, when I say this is your day, I mean it. Like, this is a huge day for you.

Other side to that, though, is I'm -- I did a deferred for me. Because if you violate any condition, then I have the whole range of punishment, and that's up to 99 years or life in prison. What you did in that store deserves prison time. So, this opportunity is for you to take, but if you don't take it and run with it and do everything right from the beginning, then you're going to be back in here and you could be looking at a lot more time in prison than what you could have gotten today. No 15-year cap. That's all gone. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions?

THE DEFENDANT: No, ma'am.

Taylor contends that the trial court's comment that if he violates his probation, he will "never get out to even try the real probation[,]" equate to the trial court predetermining his sentence before hearing the evidence.

To preserve error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. Tex. R. App. P. 33.1(a). But as the Court of Criminal Appeals determined, Rule 33.1

is not absolute. *See Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). In

*Grado*, the Court of Criminal Appeals provided the following guidance in

determining if waiver applies to the appellant's complaint.

> The general requirement that a contemporaneous objection must be made to preserve error for appeal is firmly established in Rule of Appellate Procedure 33.1. But the rule is not absolute. In *Marin*, we held that the general preservation requirement's application turns on the nature of the right allegedly infringed. We separated defendants' rights into three categories:
>
> > • The first category of rights are those that are "widely considered so fundamental to the proper functioning of our adjudicatory process . . . that they cannot be forfeited . . . by inaction alone." These are considered "absolute rights."
> >
> > • The second category of rights is comprised of rights that are "not forfeitable"—they cannot be surrendered by mere inaction, but are "waivable" if the waiver is affirmatively, plainly, freely, and intelligently made. The trial judge has an independent duty to implement these rights absent any request unless there is an effective express waiver.
> >
> > • Finally, the third category of rights are "forfeitable" and must be requested by the litigant. Many rights of the criminal defendant, including some constitutional rights, are in this category and can be forfeited by inaction.
>
> Rule 33.1's preservation requirements do not apply to rights falling within the first two categories. Barring these two narrow exceptions, all errors—even constitutional errors—may be forfeited on appeal if an appellant failed to object at trial.

*Id*. at 738–39 (citations and footnotes omitted). *Grado* specifically decided that the

right for the trial court to consider the appropriate punishment range falls into the

second category and are forfeitable only by an "effective waiver[.]" *Id*. at 743.

6

Accordingly, although Taylor failed to object at trial regarding the trial court's failure to consider the entire punishment range, absent an express waiver, he did not waive his objection for review on appeal. *See id.*

Our review of the record reveals that Taylor's complaints lack merit. In the absence of a clear showing to the contrary, we presume that the trial court was neutral and detached when it assessed the defendant's punishment and that it considered the full range of punishment. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Bias is not shown when the trial court makes no comments indicating that the court considered less than the full punishment range. *See Brumit*, 206 S.W.3d at 645; *see also Banister v. State*, 551 S.W.3d 768, 770 (Tex. App.—Fort Worth 2017, no pet.) (no bias by the trial court that "ordered a PSI, heard testimony from witnesses, and considered argument of counsel prior to sentencing [the appellant]").

Here, the record does not support Taylor's claim that the trial court failed to consider the full range of punishment. None of the trial court's comments reflect bias, partiality, or a refusal to consider evidence relevant to punishment or to the full range of punishment. *See Brumit*, 206 S.W.3d at 645. When the trial court made the statement of which Taylor complains, it was referring to the ISF program specifically and explained that if Taylor failed to comply with the program rules, his

probation would be subject to revocation before he was ever released to live in his parents' home. The revocation hearing's record reflects that the trial judge heard arguments from both the prosecutor and defense counsel before deciding to revoke Taylor's community supervision and assess punishment. Notably, the trial court told Taylor that if he violated the conditions of his probation, he would be subject to the "the whole range of punishment[.]" *Compare Banister*, 551 S.W.3d at 770, *with Ex parte Brown*, 158 S.W.3d 449, 456–57 (Tex. Crim. App. 2005) (explaining that a trial court violated the appellant's due process rights by a "promise to impose the maximum punishment if a prospective probationer fails to abide by the terms of probation and then carrying through on that promise[,]" without any evidence in the record that contradicts that promise). Because the record does not show that the trial court arbitrarily refused to consider the entire range of punishment in assessing Taylor's sentence, we overrule issue one.

## Issue Two

In his second issue, Taylor argues the trial court erred when it allowed inadmissible hearsay testimony from the State. Specifically, Taylor contends the trial court erroneously permitted "textbook hearsay" when the prosecution's only witness was allowed to testify "solely based on out-of-court statements provided to him."

We review a trial court's order revoking probation for abuse of discretion. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). At a revocation

8

hearing, the State has the burden to establish the alleged violations by a preponderance of the evidence. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). Proof of a violation of a single condition of community supervision is sufficient to support a trial court's decision to revoke. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). Because community supervision revocation hearings are judicial proceedings, they are governed by the Texas Rules of Evidence. *Ex parte Doan*, 369 S.W.3d 205, 210, 212 (Tex. Crim. App. 2012). Accordingly, we address Taylor's evidentiary issue in the same manner as other judicial proceedings. *See id*. at 212. We review the trial court's decision to admit or exclude evidence for abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

Assuming without deciding that Taylor properly preserved the issue and that the trial court erred by admitting the testimony from the witness based on out-of-court statements, we consider the issue of harm. "Error in the admission of evidence is non-constitutional error subject to a harm analysis under Rule 44.2(b)[.]" *Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing Tex. R. App. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). Rule 44.2(b) requires that we disregard the alleged error unless it affected Taylor's substantial rights. *See* Tex. R. App. P. 44.2(b); *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim App. 2005). A substantial right is affected when the

9

alleged error had a substantial, injurious effect or influence on the outcome. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

At trial, the State's sole witness, Steven Pluth, testified about Taylor's participation in the MTC East Texas Treatment Facility. Pluth stated that he is a licensed chemical dependency counselor and that he supervises and trains about 35 people at the facility. Pluth described his facility and Taylor's initial orientation into the facility. Although not admitted into the record, the transcript shows that when questioned about Taylor's infractions at the facility, he referenced a document, referred to by the State as "paperwork[.]" The defense objected to this as hearsay, and the trial court sustained the objection. The State then asked Pluth for any infractions by Taylor of which he had personal knowledge. Pluth stated that Taylor violated "major Rule No. 1, . . . no disrespect to staff." The defense objected again, which the trial court overruled. Pluth explained that he was reading from a "chronological summary" he prepared listing all of Taylor's disciplinary actions that he considered in deciding whether to give Taylor a thirty-day extension or a program removal. At each point, the trial court overruled the defense's continued objections. The defense eventually asked for and was granted a running objection regarding Pluth's testimony from the document.

Regardless of whether Taylor's testimony from the document was hearsay, there was no harm shown by the testimony. After overruling the defense's objection,

the trial court noted that all of the violations were "lined out" in the presentence investigation report presented to the trial court. Taylor did not object to the trial court's consideration of the presentencing report. The Court of Criminal Appeals has made clear that a trial court can consider the presentencing report when assessing punishment, including hearsay in a PSI, because the Rules of Evidence do not apply to PSI's contents. *See Fryer v. State*, 68 S.W.3d 628, 631–32 (Tex. Crim. App. 2002). This rendered harmless the complained-of testimony from Pluth while referencing the document. *See Mayes v State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (stating that any objectionable testimony was harmless because "substantially the same evidence" was admitted elsewhere without objection); *see also Merritt v. State*, 529 S.W.3d 549, 556 (Tex. App—Houston [14th Dist.] 2017, pet. ref'd). For these reasons, we conclude that Taylor's substantial rights were unaffected by the trial court's consideration of Pluth's testimony as the presentencing report contained the same information, which the trial court is authorized to consider in assessing punishment. *See Fryer*, 68 S.W.3d at 631–32. We overrule Taylor's second issue on appeal.

**Issue three**

Taylor argues in his third issue that the trial court violated his rights to confrontation under the Due Process Clause of the Fourteenth Amendment. *See* U.S. Const. amend. XIV. Specifically, Taylor asserts that his "due process rights to

confrontation" were violated when Pluth was allowed to testify from the complained of document. He argues that Pluth had no personal knowledge of the evidence presented.

We must first address whether Taylor's complaints were properly preserved for appellate review. Preservation of error is systemic and must be reviewed by a court of appeals, even when the issue is not raised by the parties. *Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014). To preserve a complaint for appeal, a party must make a timely, specific objection to the alleged error and obtain a ruling. Tex. R. App. P. 33.1(a); *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009). A party must "'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Pena*, 285 S.W.3d at 464 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). Moreover, whether a party's complaint is preserved is contingent upon whether the complaint on appeal comports with the complaint made at trial. *Id*. Potential constitutional violations are not immune from waiver if the party does not object at trial. *Briggs v. State,* 789 S.W.2d 918, 924 (Tex. Crim App. 1990).

Our review of the record shows that although Taylor initially objected to Pluth's testimony as hearsay, he clarified his objection and stated that he was objecting to the testimony as hearsay and as "a confrontation clause" objection.

12

When the trial court overruled his objection, defense counsel then asked for a running objection stating that "I suppose, your Honor, more specifically, the objection I'm making is, yes, the Court has it and the parties have all been furnished this but it's still hearsay. It's a confrontation issue, it's a 6th Amendment issue." Taylor again clarified his objection as a Confrontation Clause issue under the Sixth Amendment. The record does not show that he made a Due Process argument under the Fourteenth Amendment when he objected to Pluth's testimony or the document Pluth used during his testimony.

> It is well established that, in order to preserve an issue for appeal, a timely objection must be made that states the specific ground [for the] objection, if the specific ground was not apparent from the context. A general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for the objection is *obvious* to the court and to opposing counsel. When the objection is not specific and the legal basis is *not obvious*, it does not serve the purpose of the contemporaneous-objection rule for an appellate court to reach the merits of a forfeitable issue that is essentially raised for the first time on appeal.

*Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) (internal citations omitted); *see also Schultze v. State,* 177 S.W.3d 26, 38 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (noting that "an objection stating one legal basis may not be used to support a different legal theory on appeal").

Ultimately, Taylor's objections at trial were different from the constitutional challenge before us today, and he has failed to preserve his constitutional challenge of a due process violation for review. *See Rogers v. State,* 640 S.W.2d 248, 265 (Tex.

13

Crim. App. [Panel Op.] 1981) (op. on State's first motion for reh'g) (holding that when appellant failed to voice his due process objection he waived his complaint in the revocation hearing); *see also Shah v. State,* 403 S.W.3d 29, 36 (Tex. App.— Houston [1st Dist.] 2012, pet. ref'd) (holding that failing to object waives the appellant's due process argument); *see also* Tex. R. App. 33.1. Therefore, we overrule Taylor's third issue.

## Issue Four

In his final issue, Taylor argues that the trial court violated his Sixth Amendment right under the Confrontation Clause when it allowed Pluth to testify to testimonial hearsay from a document not admitted in evidence. *See* U.S. Const. amend. VI. Before reaching the merits of Taylor's argument, we must decide whether the Confrontation Clause is applicable to a revocation of community supervision hearing.

In *Ex parte Doan*, the Court of Criminal Appeals explained that a revocation hearing is a judicial proceeding governed by the same rules that govern other judicial proceedings, as opposed to an administrative hearing. 369 S.W.3d at 215. *Doan* did not decide whether the Confrontation Clause applies to revocation proceedings, and the Court of Criminal Appeals has not expressly stated in a post-*Doan* opinion whether the Confrontation Clause applies to revocation proceedings. As the Twelfth Court of Appeals explained, since *Doan* did not expressly address whether or not the

Confrontation Clause applies in a probation revocation proceeding, several of our sister courts, in addressing this issue, have either decided that the Confrontation Clause did not apply or have assumed its application without expressly deciding it. *See Sabella v. State*, 578 S.W.3d 137, 142 (Tex. App.—Texarkana 2019, pet. ref'd) (explaining the history of pre- and post-*Doan* analysis by the Court of Criminal Appeals and intermediate courts of appeals).

We note that our own court has established precedent on this issue, explaining in *Smart v. State*, that the Confrontation Clause does *not* apply to revocation proceedings. 153 S.W.3d 118, 120–21 (Tex. App.—Beaumont 2004, pet. ref'd). *Smart* was decided before *Doan* but has not been expressly overruled by the Texas Court of Criminal Appeals. In *Smart*, this Court based its decision largely on its review and analysis of United States Supreme Court cases and federal cases that held community supervision is not a stage of a criminal prosecution. *See id.; see also Pickens v. State*, No. 02-17-00050-CR, 2018 WL 3468359, at *4 (Tex. App.—Fort Worth July 19, 2018, no pet.) (mem. op., not designated for publication) (analyzing *Smart* in a post *Doan* analysis and concluding *Smart* was largely based on our review of federal case law that a revocation proceeding is not a criminal prosecution). We noted in *Smart* that the United States Supreme Court held that the revocation process should be flexible to consider evidence not admissible in a criminal trial. *Smart*, 153 S.W.3d at 120–21 *(quoting Morrissey*, 408 U.S. 471, 480 (1972)). While the Texas

Court of Criminal Appeals expressly stated in *Doan* that a revocation proceeding is a judicial proceeding with judicial processes, the *Doan* court did not expressly equate the revocation of community supervision to a criminal prosecution. *See generally Doan*, 369 S.W.3d 205. The Texarkana Court of Appeals declined to apply the Confrontation Clause to a revocation proceeding explaining that it did not find any case law expressly applying the Confrontation Clause to revocation proceedings. *Sabella,* 578 S.W.3d at 142. And while unpublished opinions offer no precedential value to the court, we find it persuasive that several of our sister courts have declined to apply the Confrontation Clause to revocation proceedings. *See Hodges v. State,* No. 04-19-00382-CR, 2020 WL 1930485, at *2 (Tex. App.—San Antonio Apr. 22, 2020, no pet.) (mem. op., not designated for publication); *Corona v. State*, No. 14-17-00821-CR, 2019 WL 1768598, at *3 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op., not designated for publication); *Anthony v. State*, No. 13-17-0327-CR, 2019 WL 639492, at *3 (Tex. App.—Austin Feb. 15, 2019, pet. ref'd) (mem. op., not designated for publication); *Pickins*, 2018 WL 3468359, at *4; *Roberts v. State*, No. 05-16-00338-CR, 2017 WL 461354, at *2–3 (Tex. App.—Dallas Jan. 24, 2017, pet. dism'd) (mem. op., not designated for publication); *Alvarez v. State*, No. 11-13-00322-CR, 2015 WL 6121359, at *3 (Tex. App.—Eastland Oct. 15, 2015, no pet.) (mem. op., not designated for publication); *but see Blackman v. State*, Nos. 01-12-00525-CR, 01-12-00526-CR, 2014 WL 50804 at *2–

16

3 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, pet. ref'd) (mem. op., not designated for publication) (noting that *Smart* along with other pre-*Doan* cases were disavowed by *Doan* for holding that a community supervision revocation hearing was merely an administrative hearing, but noting that *Doan* did not address whether the Confrontation Clause applies to community revocation proceedings). More recently after *Smart*, in an unpublished opinion, this Court stated the following about the Confrontation Clause and revocation proceedings:

> The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." A *Crawford* challenge under the Sixth Amendment "is not directly applicable in [a] revocation proceeding." The Court of Criminal Appeals has held "that when a [presentencing investigation] is used in a non-capital case in which the defendant has elected to have the judge determine sentencing, *Crawford* does not apply." In any event, the record does not reflect that the trial court, in assessing the sentences, considered the "proffer" as evidence in assessing the sentences.

*Keller v. State*, Nos. 09-11-00441-CR, 09-11-00442-CR, 09-11-00443-CR, 2012 WL 2150348, at *2 (Tex. App.—Beaumont June 13, 2012, no pet.) (mem. op., not designated for publication) (citations and footnotes omitted).

Agreeing with the overwhelming weight of authority, therefore, we conclude that a community supervision revocation proceeding, while a judicial proceeding, is not a stage of a criminal prosecution. Accordingly, the Confrontation Clause is inapplicable in those proceedings, and we decline to extend the application of the

17

Confrontation Clause to community supervision revocation proceedings. We overrule Taylor's final issue.

## Conclusion

Having overruled all of Taylor's issues on appeal, we affirm the judgments of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 7, 2020
Opinion Delivered November 4, 2020
Do Not Publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.